# Peters *r*. Southern Railway Co.

135   533
144   276

*Action against a Railroad Company to recover Damages for Personal Injuries.*

1. *Negligence; what constitutes wantonness.*—To constitute wantonness, it must be shown that the person charged therewi ᵇ conscious of his conduct and conscious, from his knowledge of existing conditions, that injury would likely or probabl sult from his conduct, and that with reckless indifference to consequences, he consciously and intentionally did some wrongful act, or omitted some known duty, which produced the injury.

2. *General affirmative charge; when properly given.*—When the facts admitted in a case conclusively establish any fact, mere denial by a witness of the existence of the facts so established, does not create a material conflict in the evidence, which requires a submission of the issue involved to the jury; and in such case it is not error to give the general affirmative charge requested by the party in whose favor the fact is so established.

3. *Action to recover damages; when general affirmative charge properly given.*—In an action against a railroad company to recover damages for personal injuries, caused by being run over by a train, where all the evidence in the case shows that the approaching train could have been certainly seen and heard by a person in the position occupied by the plaintiff, in time to have permitted the plaintiff to have escaped from injury, the testimony by the plaintiff that he both looked and listened before going upon the track, and that he neither saw nor heard the approaching train, does not constitute such a conflict in the testimony as requires the question of the

[Peters v. Southern Railway Co.]

plaintiff's contributory negligence to be submitted to the jury;
and the general affirmative charge requested by the defendant
in such a case is properly given.

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. A. A. COLEMAN.

This suit was brought by the appellant, Joseph A.
Peters, against the Southern Railway Company' to re-
cover damages for personal injuries. The facts of the
case are sufficiently stated in the opinion.

The appeal is prosecuted from a judgment in favor of
the defendant.

BOWMAN & HARSH, for appellant, cited *M. & C. R. R.
Co. v. Martin*, 117 Ala. 384; *Haley v. K. C., M. & B.
R. R. Co.*, 113 Ala. 640; *L. & N. R. R. Co. v. Webb*, 97
Ala. 308; *Crowley v. L. & N. R. R. Co.*, 55 S. W. Rep.
434; *Railway Co. v. Letsch*, 55 S. W. Rep. 584; *Magar
v. Hammond*, 67 N. Y. S. 63; *Glass v. M. & C. R. R. Co.*,
94 Ala. 587; *H. A. & B. R. R. Co. v. Robbins*, 124 Ala.
117; *Ga. Pac. R. Co. v. Hughes*, 87 Ala. 611.

SMITH & WEATHERLY and JOHN LONDON, *contra.*—The
testimony of a plaintiff that he both looked and listened
to see and hear a train, which all the evidence in the case,
including his own, showed could have been certainly
seen and heard by a person in the position occupied by
the plaintiff, and that he neither saw nor heard it, does
not make such a conflict in the testimony as required
the question to be submitted to the jury.—*Artz v. R. R.
Co.*, 34 Iowa 154; *Marland v. R. R. Co.*, 16 Atl. Rep.
623; *Myers v. R. R. Co.*, 24 Atl. Rep. 747; *Payne v. C.
& A. R. R. Co.*, 38 S. W. Rep. 308; *H. A. & B. R. R. Co.
v. Fennell*, 111 Ala. 356; *Gen. of Ga. R. R. Co. v. Foshee*,
125 Ala. 199; *North Bir. R. Co. v. Wright*, 130 Ala. 419;
30 So. Rep. 360.

The negligence of the engineer in running at an un-
lawful rate of speed, or failing to give signals to a per-
son who knows, or is chargeable in law with knowing,
that the train is approaching at a high and dangerous

rate of speed is not the *causa causans* but merely *causa sine qua non*. The cause of a condition upon which the negligence of a person in stepping upon the tract after becoming aware of the approach of the train, and the possibility of checking its speed in time to prevent a collision, operated to and as the sole cause of the injury.

Where the carelessness of the person inflicting the injury is antecedent to the negligence of the person injured, and the latter might by ordinary care have discovered the failure of the former to use such care in time to avoid the injury, there can be no recovery, because the intervening negligence of the injured person is the direct and proximate cause of his injury.—*L. & N. R. R. Co. v. Brown*, 121 Ala. 221; *Cen. of Ga. Ry. v. Lamb*, 124 Ala. 172, 176; *Cen. of Ga. Ry. v. Foshee*, 125 Ala. 199, 218; Shear. & Redf. on Neg., p. 165, § 99; Cooley on Torts, 69; 1 Hilliard on Torts, p. 130, § 4; *Crawley v. R. & D. R. R.*, 13 So. Rep. 74; *L. & N. R. R. v. Crawford*, 89 Ala. 240, 245; *Doublin & C. R. R. v. Slattery*, L. R. 3 Appeal Cas. 1155; *Davy v. Railway*, 11 Q. B. Div. 213; *L. & N. R. R. v. Webb*, 90 Ala. 185, 197; *Wood v. Pa. R. R.*, 177 Pa. 306.

The evidence showed that the defendant was not guilty of wantonness.—*Anniston Pipe Works v. Dickey*, 93 Ala. 418; *A. G. S. R. R. v. Hall*, 105 Ala. 599; *Birmingham Ry., etc., Co. v. Bowers*, 110 Ala. 328; *M. & C. R. R. v. Martin*, 117 Ala. 367; *Benson v. L. & N. R. R.*, 116 Ala. 198.

DOWDELL, J.—This is an action to recover damages for personal injuries received by the plaintiff, appellant here, from being run against and struck by defendant's locomotive. The complaint contained three counts, the first charging wanton or willful injury, and the second and third alleging simple negligence. In the second count the place of the accident is alleged to have been "at or near Gate City," and while plaintiff was crossing defendant's track, without averring that Gate City was a city, town or village. In the third count the place of the accident is alleged to have been in a "certain village, town, or city, known as Gate City;" and in this count it

is also averred that the engineer or other person having control of said locomotive, "negligently failed to blow the whistle or ring the bell at short intervals on entering into or while moving within or passing through said village, town, or city, and as a proximate consequence thereof, said engine or train ran upon or against plaintiff while plaintiff was engaged in or about crossing said railway in said city, town, or village and plaintiff suffered," etc. The pleas of the defendant were "not guilty" to all of the counts, and to the second and third, contributory negligence. On these issues the case was tried. And upon the conclusion of the evidence, at the request of the defendant in writing, the court gave the general charge to find for the defendant, and verdict and judgment were accordingly rendered. No questions are presented on the pleadings; the only error assigned being the giving of the general charge.

On the trial the only evidence adduced was that of the plaintiff and his witnesses, the defendant offering none. The evidence without conflict shows that the plaintiff walked on the track of the defendant at a private footpath in the outskirts of Gate City, a town or village of about twelve or fifteen hundred population, and before he got out of the way of an approaching passenger train was struck by the head-block of the locomotive and injured. That the path led across defendant's track to the Reed house on the south side, where plaintiff lodged. That besides this house, there were two other houses on that side, about seventy-five or a hundred yards apart. There is neither averment nor proof as to the extent of the use of the path, or to numbers or frequency of persons crossing; nor any averment or proof as to knowledge on the part of defendant's engineer or other person in control of, and operating the locomotive, of the use of the foot way or path. That the train which struck the plaintiff was running at the rate of forty-five or fifty miles an hour. There is no pretense that the act of running against and injuring the plaintiff was willful; on the contrary the plaintiff's undisputed evidence showed that the engineer was at the time looking back in an op-

posite direction, and, therefore, did not see or know of plaintiff's presence on the track in front of the locomotive. And under the undisputed facts, we are unable to see how it can be said that the injury was wantonly inflicted, unless it can be affirmed as matter of law that the speed of fifty miles an hour was of itself evidence of wantonness, and this, of course, cannot be stated as the law. It has been repeatedly held before one can be convicted of wantonness the facts must show that he was conscious of his conduct, and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, and that with reckless indifference to consequences, he consciously and intentionally did some wrongful act, or omitted some known duty, which produced the injury.—*M. & C. R. R. Co. v. Martin*, 117 Ala. 367; *Benson v. L. & N. R. R. Co.*, 116 Aa. 198; *Birmingham R. Co. v. Bowers*, 110 Ala. 328; *A. G. S. R. R. Co. v. Hall*, 105 Ala. 599; *Anniston Pipe Works Co. v. Dickey*, 93 Ala. 418; and other cases might be cited. There was no evidence of knowledge on the part of defendant's engineer, or, as for that matter of any other person on the locomotive, of plaintiff's peril or presence on the track, or knowledge of existing conditions at the time and place of the accident, that injury would likely or probably result to the plaintiff or any one else from the speed at which the train was being run. The general charge for the defendant under the first count, we think, was properly given.

The next consideration is whether the general charge should have been given on the second and third counts which counted on simple negligence, and on the issue of contributory negligence raised by the plea to those counts. The determination of this question is not wholly free from difficulty. We have held the rule to be that "the affirmative charge should never be given when there is any material conflict in the evidence, or when there is evidence which authorizes a reasonable inference of facts unfavorable to a right of recovery by the party asking the charge."—*White, McLane & Morris v. Farris*, 124 Ala. 470. There was evidence tending to show that the train was being run within the limits of a city, town,

or village, without the ringing of the bell, or blowing the whistle, at short intervals, as required by the statute. Code, § 3440. This was negligence on the part of defendant's employes, and for any injury resulting to the plaintiff as a proximate consequence of such negligence, the defendant would be liable, unless the plaintiff himself was guilty of negligence, which contributed proximately to his hurt. And this brings us to a consideration of the main question in the case, and that is, whether the facts show, without material conflict, that the plaintiff was guilty of contributory negligence. The facts without dispute show that the plaintiff was injured while in the act of crossing the defendant's track along a private footpath which led across said track. While the plaintiff had the right to cross the track without becoming a trespasser in so doing, yet this right was one to be exercised with due care. It must be conceded that if in the exercise of this right in crossing, he had failed to stop, look and listen for an approaching train, he would have been guilty of negligence in such failure, and for any injury received as a proximate consequence thereof, there could be no recovery of damages, except for wanton or willful misconduct on the part of the defendant or its agent. It is equally clear as a proposition of law that any other want of due care in the exercise of the right in crossing the track would constitute negligence, and for any injury resulting as a proximate consequence there could be no recovery. Does the evidence show an exercise of due care by the plaintiff, or, rather, does it not show, without material conflict, that there was a failure to exercise due care? The plaintiff, testifying in his own behalf, swore that he, in company with one Hendrix, was walking along the footpath that led to and across defendant's tracks, and that when they came to the crossing of the railroad, they stopped near the tracks and engaged in conversation, waiting for a freight train on a parellel track, and beyond the track next to, and upon which, plaintiff was hurt in his effort to cross, which was going east, to pass. That as soon as the freight train had cleared the way by about a car and a half or

two car lengths plaintiff proceeded to within eight or ten inches of the rails of defendant's track, and there he again stopped to look and listen before entering upon the track, and that he looked first to the east up the track, and then to the west down the track, and neither seeing nor hearing an approaching train, he proceeded to cross. That he had taken two steps, and was midway between the rails, when his companion, Hendricks, who was behind him, halloed to him to look out. That he looked, and saw an approaching train coming from the east and going west, and that it was right on him, and in twenty-five feet of him. That as soon as he saw it he turned back and did all he possibly could to get off the track and save himself. That he cleared the rails, but was struck by the head-block of the engine. Hendricks, testifying in behalf of the plaintiff, swore that when he saw the approaching train and halloed to the plaintiff to look out, it was then 150 feet away. Another witness for the plaintiff testified to the same effect. The approaching train came around a curve in a cut, and the undisputed facts show that from where plaintiff testified that he stopped to look and listen, to the end of the curve next to him, in the direction from which the train was coming, the distance was 260 feet, and that it was in the daytime, about one o'clock in the afternoon, and no obstruction to prevent plaintiff from seeing the train for that distance. The plaintiff also testified that at the time his sight and hearing were both good. The testimony of all of the witnesses put the speed of the train at from forty-five to fifty miles an hour. The distance between the rails of the track was four feet and eight inches. Taking the greatest speed at which the evidence showed the train was running—fifty miles an hour—it requires only a simple mathematical calculation to show the time required for the train to cover the intervening space of 260 feet. It required a fraction over three and a half seconds, and in which time one walking at the ordinary gait of three miles an hour would have gone the distance of sixteen feet, which would have placed him at least nine feet beyond the track, estimating the width be-

tween the rails at four feet and eight inches, and in-
cluding the ten inches, that being the distance from the
rail at which the plaintiff stopped to look and listen,
before proceeding to cross, making a distance of five
and a half feet. This would have put the plaintiff on
safe ground. And in the same time that it required the
train to cover the intervening space of 260 feet, one walk-
ing at a gait of two miles an hour would have gone nine
feet, which would have cleared the track by three feet
and six inches, and saved him from collision, and any
slower pace than two miles an hour, would not have been
the exercise of due care in crossing a railroad where an
approaching train around a curve could not be seen a
greater distance than 260 feet, in this day of rapid tran-
sit by the use of steam power. The plaintiff says when
he looked up the track the train was not in sight; then,
under the admitted facts as to measurement of the dis-
tance, the oncoming train must have been even more
than 260 feet away. In the face of these undisputed
facts as to speed and distances, can it be said that the
mere statement of the plaintiff in evidence, however con-
scientiously made, that he stopped, looked and listened
before entering upon the track, that he neither saw nor
heard a train approaching, that as soon as he saw it
coming he turned back and did all he possibly could to
save himself, raises up a material conflict in the evi-
dence, as to his failure in the exercise of due care and
prudence, in his effort to cross? We think not. To
have stopped, loitered or lingered upon the track in cross-
ing it, or to have walked with indifferent leisure in cross-
ing, would have been a want of due care, and conse-
quently negligence. When facts are admitted which con-
clusively establish another fact, the mere denial by a
witness of the existence of the fact so established, does
not and should not create that material conflict in evi-
dence which would require a submission of the issue to
the jury. In the case of *Artz v. Railroad Co.*, 34 Iowa
154, 159, in discussing the question before us, it was
there said: "But, it is urged by the appellee's counsel
that plaintiff testifies that he did both look and listen

[Peters v. Southern Railway Co.]

to see and hear the train, but did not; and that this testimony shows that he was not guilty of contributory negligence, or that, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict. Suppose the fact is conceded that the sun was shining bright and clear at a specified time, and a witness having good eyes, should testify that at the time he looked and did not see it shine. Could this testimony be true? The witness may have been told that it was necessary to prove in the case that he did look and did not see the sun shine; he may thought of it with a desire that it should have been so; he may have made himself first believe it was so, and this belief may have ripened into a conviction of its verity, and, possibly, he even may testify to it in the self-consciousness of integrity. But, after all, in the very nature of things, it cannot be true, and hence cannot, in the law, form any basis for a conflict upon which to rest a verdict. A man may possibly think he sees an object, which has no existence in fact, but which it may be difficult, if not impossible, to prove did not exist or was not seen. But an object and power of sight being conceded, the one may not negative the other." The following cases are to the same effect: *Marland v. Railroad Co.* (Pa. Sup.), 16 Atl. Rep. 623; *Myers v. Railroad Co.* (Pa. Sup.), 24 Atl. Rep. 747; *Payne v. Chicago, etc., R. Co.*, 38 S. W. Rep. 308, 136 Mo. 562; *Chicago, etc., R. Co. v. Pounds*, 82 Fed. Rep. 217. While the precise question before us has not been decided by this court, the principle involved has been tacitly recognized and applied in a number of cases, among which are the recent cases of *H. A. & B. R. Co. v. Fennell*, 111 Ala. 336, and *Central of Ga. R'y Co. v. Foshee*, 125 Ala. 199.

Our conclusion is that the trial court committed no error in the giving of the affirmative charge requested in writing by the defendant.

There being no error shown in the record, the judgment of the circuit court will be affirmed.