51 So.2d 870

KING et al. v. BRINDLEY et al.

6 Div. 953, 954.

Supreme Court of Alabama.

April 12, 1951.

426

Clifford Emond, of Birmingham, for appellees.

F. W. Davies and Davies & Williams, all of Birmingham, for appellants.

LIVINGSTON, Chief Justice.

Jean Brindley and Doris Barker sued C. B. King, doing business as Shades Valley Cab Company, Casualty Reciprocal Exchange of Kansas City, Missouri, and Tom F. Gallups, in the Circuit Court of Jefferson County, Alabama, claiming damages for personal injuries received when an automobile in which they were riding collided with an automobile belonging to King and driven by Gallups.

Separate suits were filed in the court below, but the pleadings and evidence, except as to the extent of the injuries, and applicable law being identical in the two suits, they were consolidated and tried together. The jury returned verdicts in favor of each plaintiff and defendants appealed. By amendment, Gallups was stricken as party defendant before the jury retired.

The cases were consolidated on appeal and submitted on one record. We will, therefore, treat the questions presented as if a single plaintiff was involved, with the understanding, of course, that this decision applies to each plaintiff.

The case was submitted to the jury on count A of the complaint. Count A claimed damages of $5000.00 against C. B. King, doing business as Shades Valley Cab Company; · Casualty Reciprocal Exchange of Kansas City, Missouri, and Tom F. Gallups, and alleged that plaintiff was riding as a passenger in an automobile upon a public highway in the City of Birmingham, Jefferson County, Alabama, at Third Avenue and Eighth Street West on the 5th day of September, 1948, and at said time and place, a motor vehicle driven by the defendant, Gallups, as agent for the defendant C. B. King, doing business as Shades Valley Cab Company, ran into, upon, or against the automobile in which the plaintiff was riding, and as a proximate consequence thereof, plaintiff suffered the injuries and damages claimed in the complaint. The count also alleged in substance that the automobile of the defendant King, at the time of the accident, in compliance with the laws, ordinances and regulations of the City of Birmingham, was insured in the Casualty Reciprocal Exchange, of Kansas City, Missouri, and that the said defendant King had procured permission from the City of Birmingham for the operation of said motor vehicle which collided with the automobile in which plaintiff was riding, and had caused to be executed and filed with the City of Birmingham, in accordance with the laws, ordinances, and regulations, an insurance contract, by the terms of which, as the laws of said City of Birmingham provided, the defendant, Casualty Reciprocal Exchange, of Kansas City, Missouri, agreed to insure the plaintiff against injuries and damages sustained as a proximate consequence of the negligence of the defendant Gallups while acting as agent for defendant King in and about the operation of said motor vehicle on said occasion; and said contract of insurance was in full force and effect on the date and occasion complained of in the principal sum of Five Thousand Dollars; and further that all her said injuries and damages aforesaid were proximately caused by the negligence of the defendant, Tom F. Gallups, while acting within the line and scope of his employment as an agent, servant or employee of the defendant C. B. King, doing business as Shades Valley Cab Company, in and about the operation and control of the said motor vehicle driven by him at the time and place aforesaid.

Demurrers of each defendant to the complaint were overruled.

Casualty Reciprocal Exchange also filed a motion to strike it as a party defendant on the ground that it was improperly joined as a party defendant. The motion was overruled.

Defendants interposed a plea of the general issue in short by consent with leave, etc.

The undisputed evidence shows that plaintiff in the court below, appellee here, was injured at the intersection of Eighth Street West and Third Avenue in the City of Birmingham, Alabama, at about 2:30 A. M., on September 5, 1948: that she was

riding in a U-Drive-It car driven by James Newman; that Jean Brindley was riding on the front seat with Newman, and that Doris Barker and Thomas York were riding on the back seat of the car driven by Newman; that the Newman car was proceeding west on Third Avenue; that the taxicab of King, driven by Gallups, was proceeding south on Eighth Street West; that the Newman car ran into the side of the King car, striking it at about the left front door, in the intersection of Third Avenue and Eighth Street West; that there is a boulevard "stop" sign on Eighth Street West, some 10 or 15 feet north of the intersection with Third Avenue.

Appellee's evidence tended to prove that the car driven by Newman, and in which she was riding, was proceeding along Third Avenue in a westerly direction at a speed of from 20 to 25 miles per hour: that as the Newman car entered the intersection formed with Eighth Street West, the cab driven by Gallups, going south on Eighth Street West, drove out into the intersection and stopped, or nearly so, in the path of the Newman car.

On the other hand, appellants' evidence tended to show that the cab driven by Gallups approached the intersection on Eighth Street West and stopped at the stop sign; that Gallups looked in both directions, then proceeded slowly into the intersection and seeing the Newman car approaching at a high rate of speed stopped again after the cab had reached a point about a car's length into Third Avenue, and that the Newman car ran into the side of the cab. Gallups' testimony is in conflict as to the distance the Newman car traveled after he saw it. He testified that it was within 30 or 40 feet of his cab when he first saw it, and also that it was some 100 or 200 feet away when he first saw it.

The evidence is also conflicting as to how far east the view of Third Avenue is clear from a point at the north curb line of said avenue where it intersects Eighth Street West.

■ Clearly the evidence was sufficient to take the case to the jury on the issue of the negligence vel non of the driver of the taxicab. Affirmative charges for the appellants, on that issue, were properly refused and assignments of error based thereon are without merit.

Appellants insist that the evidence was also sufficient to take the case to the jury on the issue of appellee's contributory negligence, and that charges, in effect written general charges on that issue, were erroneously given for appellee.

■ One riding in an automobile driven by another, even though not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable or ordinary care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances. Moore v. Cruit, 238 Ala. 414, 191 So. 252; Proctor v. Coffey, 227 Ala. 318, 149 So. 838; Bradford v. Carson, 223 Ala. 594, 137 So. 426; McDermott v. Sibert, 218 Ala. 670, 119 So. 681; Birmingham Ry. Light & Power Co. v. Barranco, 203 Ala. 639, 84, So. 839; Utility Trailer Works v. Phillips, 249 Ala. 61, 29 So.2d 289; McGeever v. O'Byrne, 203 Ala. 266, 82 So. 508, 510; Birmingham Southern Ry. Co. v. Harrison, 203 Ala. 284, 82 So. 534.

Some of the cited cases are suits by the passenger against third persons, others by the passenger against the driver or owner of the vehicle in which the passenger or guest was riding. But as said in the case of McGeever v. O'Byrne, supra: "it can make no difference in principle whether the suit is against a third person, or against him who negligently operates the car; and the duty of the passenger to observe due care under the circumstances for his own safety must be the same in either case."

And in speaking of the duty to use due care on the part of the guest or passenger it was held in the case of Birmingham Ry. Light & Power Co. v. Barranco, supra [203 Ala. 639, 84 So. 842]:

"The duty is therefore not original with respect to the operation of the vehicle, but resultant, and that only from known and appreciated circumstances capable of bringing it into effect * * * no fixed rule applicable to all cases can be formulated by which

to determine when the duty stated arises, or what particular circumstances raise the duty, or what particular warning, protest, or action will suffice to manifest a discharge of the duty once it has arisen."

"The ingredients of contributory negligence do not differ in any respect from those of primary negligence; it is after all 'like primary negligence, relative and not absolute, and being relative it is dependent on the peculiar circumstances of each particular case.'" McDermott v. Sibert, supra [218 Ala. 670, 119 So. 684].

It was said in Proctor v. Coffey, supra: "We do not think that the authorities support the claim that a mere opportunity to know the danger is sufficient in the absence of facts suggesting to the guest as a person of ordinary care a necessity to keep a watch. That is what was held in the case of Baker v. Baker, supra [220 Ala. 201, 124 So. 740]. So in the case of B.[irmingham] R.[y] L.[ight] & P.[ower] Co. v. Barranco, supra, the duty of the guest is said to arise when he shoud anticipate that the driver of the vehicle will enter the sphere of danger or omit to exercise due care, not when he has the opportunity to so anticipate without anything to direct his attention to such condition. This principle is also mentioned in McGeever v. O'Byrne, supra; Dwight Mfg. Co. v. Word, 200 Ala. 221(14), 75 So. 979." [227 Ala. 318, 149 So. 840.]

And in Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610, 619: "That is, there is no duty on the guest, in the absence of 'knowledge of facts charging him with that duty, to anticipate that a driver will be negligent, reckless or incompetent' in the operation of the car and in keeping a proper lookout."

■ In the light of the foregoing principles we turn to an analysis of the evidence touching the question of the contributory negligence of appellee, keeping in mind, of course, that the burden of proof in that regard is on defendants in the court below.

Miss Brindley, Miss Barker and Newman testified that the Newman car entered the intersection first, or at about the time the King taxicab entered the intersection, and at a rate of speed of from 20 to 25 miles per hour; that after the Newman car entered the intersection the King car proceeded out into the intersection in front of the Newman car, about a car's length and stopped, or nearly so. On the other hand Gallups, the driver of the King car testified that the King car entered the intersection first after stopping at the stop sign on Eighth Street West; that he looked in both directions and saw no cars approaching; that after he had driven into the intersection about a car's length he looked to his left and saw the Newman car approaching, and that he then stopped within about a foot. Gallups further testified on direct examination as follows:

"Q. How fast in your best judgment was that car going? A. Every bit of 70 miles an hour when I first saw him.

"Q. Did he slow up until he got on you? A. Not until he got on into me. He was shimmying."

On cross-examination Gallups testified as follows:

"Q. To the best of your recollection you testified it was 70 miles an hour? A. To the nearest of my recollection.

"Q. Did you know—you heard the man, Mr. Newman, say how fast he was going to the police? A. Yes, sir.

"Q. What was that? A. Twenty-five.

"Q. Twenty-five miles an hour. Didn't you go over there then and say he was going 70 miles an hour? A. I said that right there that night.

"Q. Told the officers; and did you tell them he was going 70 miles an hour? A. I said he would have had to be going 70.

"Q. Oh, you said he would have had to be going 70. Are you basing it on what you actually know or what you concluded about it since then? Did you know he was going 70 miles an hour? A. No, I don't know that it was going 70 miles an hour.

"Q. You didn't even see it long enough to judge his speed? A. I saw him about 30 or 40 feet."

It is undisputed that the Newman car ran into the side of the King car striking it practically head-on at about the left front door of the King car and pushed or shoved the King car some 10 to 15 feet and par-

tially turned it around; that when the cars stopped moving after the impact, the front of the Newman car was still in contact with, or up against the King car; that Newman started his car, and on its own power, backed away from the King car, drove around it and parked at the curb of Third Avenue; the left front door of the King car would not open after Newman backed his car away, but neither Gallups, the driver of the King car, nor Newman were injured at all; Gallups had two passengers in the King taxicab, neither of whom were hurt. The Newman car was a 1946 or 1947 Chevrolet, and the King car was a 1946 Chevrolet.

It was undisputed that Miss Brindley and Miss Barker got in the car with Newman and York about 10:30 o'clock, P.M., at the home of a friend of Miss Barker; that the parties rode around for a while and went to the Woodland Club and danced until about 1 or 1:30 A.M.; that they went from the Woodland Club to the Exchange Cafe and ate; that they left the cafe about 2:30 A.M., and were proceeding to the home of one of the girls when the two cars collided. It is also undisputed that the parties, except Miss Brindley, had two or three drinks at the Woodland Club. It was raining at the time of the accident and had been raining off and on all night.

There is no evidence in the record to justify an inference that Newman was an incompetent driver on account of being under the influence of whiskey, other infirmities or otherwise, at the time of the accident. The negligence of appellee must therefore rest upon the evidence as to the excessive speed of the Newman car and her duty of exercising reasonable care to avoid injury; that is, such care as an ordinarily prudent person would exercise under like circumstances.

■ The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy its probative force. Where, however, the testimony of a witness is incredible, inherently or physically impossible and unbelievable, inherently improbable and irreconcilable with, or contrary to physical facts and common observation and experience, where it is so opposed to all reasonable probabilities as to be manifestly false, or is contrary to the laws of nature or to well-known scientific principles, or where it cannot be said to amount to substantial evidence of facts testified to or accepted as a basis of liability, it is to be disregarded as being without evidentiary value even though uncontradicted. 20 Am.Jur. pp. 1033, 1034, 1035, §§ 1183, 1184; Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332; Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A.L.R. 802; Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 91 A.L.R. 212.

■ To say that an automobile running 70 miles per hour can drive head-on into the side of another automobile standing still, or nearly so, of approximately equal weight, with the results outlined above, is by far, too great a tax on judicial credulity. We simply know that it did not happen. Stripped of this evidence, there is none left upon which to predicate a finding that appellee was guilty of negligence which proximately contributed to her injury, and the trial court did not err in giving the general charge in her favor on that issue.

The point is raised, by demurrer and otherwise, that Casualty Reciprocal Exchange was improperly joined as a party defendant.

It is not denied that the King taxicab was covered by a policy of insurance in accordance with section 1367 of the Municipal Code of Birmingham. The argument seems to be that section 1367, supra, requires that the policy of insurance be conditioned to pay *any final judgment* rendered against the person operating the vehicle, rather than conditioned to pay *damages* caused by the negligent operation of said vehicle. The ordinance reads as follows: "No license shall be granted to any person, to operate taxicabs for hire on the streets or public places of the city until such person shall have first filed with the city clerk for each and every taxicab so operated a liability and property damage insurance policy of a public liability insurance company authorized to do business in the State of Alabama, in the sum of $10,000.00 for

personal injury liability, and $1,000.00 for property damage liability, which said liability insurance policy shall be issued to such person and shall provide for the payment of any final judgment, not to exceed the sum of $5,000.00 for injury to one person, and subject to the same limits per person, or $10,000.00 for injury to more than one person, and $1,000.00 property damage in any one accident, that may be rendered against such person operating such vehicle, for damage to person or property resulting from accident or collision arising out of or occurring by reason of the careless or negligent operation of such vehicle by such person or his agent, servants or employees. Said policy shall stipulate that any person who may sustain damage to his person or property, resulting from such careless or negligent operation of such vehicle, shall have his right of action on said policy as fully and to the same extent as if said policy was made and executed directly in favor of the claimant for such damages."

It will be noted that the ordinance does provide that "any person who may sustain damage to his person or property, resulting from such careless or negligent operation of such vehicle shall have his right of action on said policy as fully and to the same extent as if said policy was made and executed directly in favor of the claimant for such damages." See Employers Insurance Co. v. Johnston, 238 Ala. 26, 189 So. 58; Auto Mutual Indemnity Co. v. Moore, 235 Ala. 426, 179 So. 368; Baggett v. Jackson, 244 Ala. 404, 13 So.2d 572; Watkins v. Reinhart, 243 Ala. 243, 9 So.2d 113.

The policy here involved, by endorsement, contained the same provision as that quoted last above. Casualty Reciprocal Exchange was not an improper party defendant and assignments of error raising the point are without merit.

There are many assignments of error based on rulings with reference to the deposition of witness Ellis who was a passenger in the King taxicab. The deposition was taken by appellants but introduced by appellee. We have examined these assignments and do not think they merit an extended discussion. They are without merit. We have also carefully considered the action of the trial court in overruling appellant's motion for a new trial and find no error.

There are numerous assignments of error, and in many instances several assignments raise but a single point, and for that reason, we deem it unnecessary to discuss each assignment separately.

We find no error to reverse, and the judgment in each of the cases consolidated on appeal is therefore affirmed.

Affirmed.

BROWN, LAWSON, and SIMPSON, JJ., concur.