286 So.2d 841

Jesse **RIDDLE**

v.

Garmon **FRANKLIN** et al.

David Wayne **RIDDLE**

v.

Garmon **FRANKLIN** et al.

SC 162, SC 163.

Supreme Court of Alabama.

Dec. 6, 1973.

J. Wm. Thomason, Bessemer, for appellants.

Rives, Peterson, Pettus, Conway & Burge and Edgar M. Elliott, III, Birmingham, for appellees.

COLEMAN, Justice.

Plaintiffs appeal from judgments for defendant in actions for damages for personal injury sustained by one of the plaintiffs when a motorcycle on which he was riding as a passenger collided with an automobile operated by defendant.

The collision occurred at approximately nine o'clock at night in December on Warrior River Road, which is a blacktop road leading to campsites on the river. The injured plaintiff testified at the trial that he was seventeen years old. The motorcycle driver testified that he was sixteen years old. The motorcycle was traveling in an easterly direction.

Defendant was traveling in a westerly direction. She turned left into a driveway on the south side of the road. When she placed her car in reverse to back into the highway the motor stalled. Part of the car remained in the eastbound traffic lane. While the car was stalled the motorcycle ran into the car, and the motorcycle passenger was injured.

The plaintiff in one action is the motorcycle passenger and his father is the plaintiff in the other action. The two actions were consolidated for trial and on the appeal.

Plaintiffs contend that the rulings of the trial court were erroneous in three respects.

## 1.

Plaintiffs argue that the trial court erred in overruling plaintiffs' motion for new trial for that the verdict is contrary to the great preponderance of the evidence.

Plaintiffs argue that the facts are such that the only reasonable conclusion is that defendant was guilty of negligence as a matter of law. There is evidence that at nine o'clock at night on Warrior River Road, in December, defendant was driving in a westerly direction; that she could see clearly for two or three blocks to the east and two or three blocks to the west; that no traffic was coming from either direction; that her front and rear lights were on; that she turned left into the entrance to a driveway on the south side of the road; that her car stalled and was partially in the eastbound traffic lane; that she attempted to start the car but was not able to do so through no fault on her part; that, while her car was stalled, the motorcycle on which plaintiff was riding came into view from the west traveling at a speed of fifty miles an hour and did not slow down until it hit defendant's car over the right rear wheel; and that there is a posted speed sign indicating a speed limit of forty-five miles per hour for traffic traveling east on Warrior River Road at the point of impact.

This court has said:

". . . But when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court as to the weight of the testimony, or because it is against the mere preponderance of the evidence. . . ." Cobb v. Malone, 92 Ala. 630, 635, 9 So. 738, 740.

■ In light of the evidence noted above we are not persuaded that there is no evidence to support a finding by the jury that defendant was not guilty of negligence which proximately caused plaintiff's injury, or that the trial court erred in overruling those grounds of the motion for new trial wherein plaintiffs assert that the verdict is not sustained by or is contrary to the great preponderance of the evidence.

## 2.

Plaintiffs assign as error giving to the jury defendant's requested charge as follows:

"17. I charge you that you cannot return a verdict in favor of the plaintiff and against the defendant Christine Franklin based upon Count B of the plaintiff's complaint."

The son's complaint contained two counts, (A) charging negligence, and (B) charging wantonness. The father's complaint contained only one count, (A) charging negligence.

Plaintiffs first argue that there is a scintilla of evidence to prove that defendant was guilty of wantonness because plaintiff had pulled across the eastbound lane, was blocking a substantial portion of it, and that the lights on plaintiff's car were not on. The witness, Letson, was the driver of the motorcycle on which the plaintiff, who was injured, was riding. Plaintiffs say that the testimony of Letson furnishes evidence to support an inference that defendant's lights were not on. Defendant says that the testimony of Letson does not provide such evidence. Pertinent testimony of Letson is next set out.

"Q When you rounded the curve and came into that intersection, Sam, could you see the car then?

"A No, sir.

"Q Okay. When could you first see the car?

"A When my headlights hit it.

"Q Okay. When did your headlights hit it? Do you have a judgment in feet or length of a football field or portion of the length of a football field or whatever, however way it was?

"A   Maybe a hundred foot.

"    . . .

"Q   Okay.  Now, when you approached this, and when you first saw the car was there anything in the—let's see, now, this would be the west-bound lane of traffic.  Just keep seated there, Sam, let me point up here. You were going this way.  And this lane of traffic coming this way, was there anything in this lane of traffic?  Did you see any headlights?

"A   Yes, sir.

"Q   You did?

"A   Yes, sir.

"Q   Do you know where those headlights were?  Do you know where they were located when you saw them?

"A   Car was stopped in the other lane.

"Q   Did you know that when you saw them?

"A   No, sir.

"Q   You learned that after the accident; is that correct?

"A   Yes, sir.

"    . . .

"Q   Are you saying that there were no lights on Mrs. Franklin's car?

"A   I didn't see any.

"Q   Have you not made the statement, Sam, that you did see the lights on her car but you thought it was in the driveway?

"A   I seen some lights and I thought they was off the road.

"Q   It later turned out that that was the lights on her car, didn't it, Sam?

"A   Yes, sir.

"Q   So you saw her headlights, didn't you?

"A   I saw tail lights.

"Q   Tail lights.  And they were on her car?

"A   Yes, sir.

"Q   You also saw the headlights didn't you?

"A   I don't really remember.

"Q   Do you remember making a statement that you did see the headlights and thought the car was in the driveway?

"A   I remember saying that there were lights off the road.

"Q   Do you remember also saying that you saw the headlights on the car?

"A   I don't remember.

"Q   But you did see lights, whether they were headlights or tail lights, did you not?

"A   Yes, sir.

"Q   They were on, no question about that; is that right?

"A   Yes, sir.

"Q   You saw those before your headlights picked up her car, didn't you?

"A   Just a little bit before.

"Q   How far back in your best judgment did you see those lights before your headlights picked up her car?

"A   Fifty foot.

"    . . .

"Q   Sam, you said you saw some lights?

"A   Yes, sir.

"Q   Have you ever identified those lights as the lights on Mrs. Franklin's car?

"A   If I really knew that they was hers or not?

"Q Do you know now whether they were her lights or whether they were some other lights?

"A No, sir.

" . . .

"Q (By Mr. Thomason) Do you know anything about where the lights—let me rephrase that. Do you know whether or not the lights you saw were the lights on Mrs. Franklin's car?

"A No, sir, I don't.

"MR. THOMASON: That's all.

"RECROSS EXAMINATION

"BY MR. ELLIOTT:

"Q Wasn't any other cars around, was there, Sam, except hers and the one you said was stopped?

"A That's the only one I seen.

"Q. And you said the one stopped was heading toward you, was it not?

"A Yes, sir.

"Q So you couldn't see the tail lights on it, could you?

"A No, sir."

Letson testified unequivocally that he saw taillights and could not see taillights on the car that was coming toward him. He also saw some lights he thought were off the road. The only cars shown to be present were defendant's car and the car coming toward Letson. The only taillights Letson could have seen, according to his testimony, were the taillights on defendant's car. We are of opinion that there is no testimony to support an inference that defendant's lights were not on.

As stated above, at the place where defendant turned, she could see two or three blocks in both directions. There is no testimony that any vehicle was in sight of defendant at the time she made the turn to the left. No evidence is pointed out which shows that defendant was aware of any danger from approaching traffic, or other cause, at the time she made the left turn, or that there was any reason for defendant to anticipate danger arising out of making a left turn at the time and under the circumstances shown by the evidence.

This court has said:

"The court, dealing with the wanton count in Peters v. Southern Railway Co., 135 Ala. 533, 33 So. 332, 333, observed: 'It has been repeatedly held, before one can be convicted of wantonness the facts must show that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act, or omitted some known duty, which produced the injury. Memphis & C. R. R. Co. v. Martin, 117 Ala. 367, 23 So. 231; Burson v. Louisville & N. R. R, Co., 116 Ala. 198, 22 So. 457; Birmingham Railway & Electric Co. v. Bowers, 110 Ala. 328, 20 So. 345; Alabama G. S. R. R. Co. v. Hall, 105 Ala. 599, 17 So. 176; Anniston Pipe Works Co. v. Dickey, 93 Ala. 418, 9 So. 720; and other cases might be cited. . . .' " Atlantic Coast Line R. Co. v. Barganier, 258 Ala. 94, 102, 61 So.2d 35, 42.

See also: Naugher v. L. & N. R. Co., 206 Ala. 515, 91 So. 254; Smith v. Roland, 243 Ala. 400, 10 So.2d 367; and Johnson v. McNear, 255 Ala. 457, 52 So.2d 154.

■ Under the authorities cited, the evidence fails to show wantonness on the part of defendant.

■ Plaintiffs' second argument is that giving charge 17 prejudiced plaintiffs because there was a Count B in the complaint filed by the son but there was only one count, Count A, in the father's complaint. It is correct that the father's com-

plaint contained only one count; i. e., Count A, which charges defendant with negligence. The son's complaint contained two counts; i. e., Count A charging defendant with negligence and Count B charging defendant with wantonness.

Plaintiffs state in brief:

"Plaintiff submits that the giving of the general affirmative charge addressed to any count of a single count complaint is tantamount to giving the general affirmative charge to the complaint as a whole. At the very least the giving of said charge in this case was substantial prejudicial (sic) to plaintiff for that it would make it difficult for the jury to reconcile the written instructions with the Court's oral charge."

Plaintiffs argue further to the effect that plaintiffs were prejudiced by charge 17 because, in charging with respect to contributory negligence of the son, the court, in oral charge, had previously stated to the jury: " . . . if the son is prohibited from recovery the father is prohibited from recovery."

Prior to the last statement quoted from the oral charge, the trial court, in the oral charge, had instructed the jury as follows:

"And I charge you further that in David's case there is a Count 'A' and a Count 'B'. Those are two claims that are made. Count 'B' which charges what we call wantonness is also eliminated from your consideration as a matter of law. So you are not concerned with Count 'B', but the case is submitted to you only under Count 'A' of David's case and only under Count 'A' of Jesse Riddle's case, the father. Jesse Riddle actually did not have a Count 'B' in his case, so there is no occasion to eliminate it. But each of the cases is submitted to you upon Count 'A' only."

We are of opinion that the court did not err in giving defendant's charge 17.

3.

Plaintiffs assign as error the action of the trial court in sustaining defendant's objection to certain questions propounded by plaintiffs to certain witnesses.

Two questions were propounded by plaintiffs to the defendant on cross examination as follows:

"Q Do you know the practical way, the safest way to turn a car around when you are turning around and going in the opposite direction?

"MR. ELLIOTT: We object to that, may it please the Court, calls for a conclusion, opinion on the part of the witness, invades the province of the jury and irrelevant to this case.

"THE COURT: She's not qualified as an expert, she hasn't been qualified as an expert.

"Q (By Mr. Thomason) Have you read any driving manuals? To get your license did you read any driving manuals?

"A You have to when you get your license.

"Q Did any of those manuals say that when you turn around to change directions and go back in the opposite direction that you should back into the street and then pull out?

"A It's been too many years since I read it.

"Q Do you know if that's the safest procedure?

"MR. ELLIOTT: Object to that, may it please the Court.

"THE COURT: Sustained."

No evidence was produced to qualify defendant as an expert in the operation of an automobile, or that she had gained by experience an acquaintance with the

subject, a knowledge not common to others. Even if other reasons be pretermitted, objections to the questions propounded to defendant were sustained without error for the absence of evidence qualifying her as an expert on procedure for operating an automobile.

Plaintiffs assign as error the action of the court in sustaining objection to three questions propounded by plaintiffs to Garmon Franklin, husband of defendant, on cross examination. He is a defendant in the cases, but the affirmative charge in his favor was given by the trial court. No exception to this ruling is taken by plaintiffs. The testimony given by this witness is summarized by plaintiffs in their brief as follows:

". . . On Direct Examination; That he is the husband of the defendant, Christine Franklin (R–126); that he works the 3–11 shift for the Bessemer Police Department and was on duty at the time of the accident, was notified of the accident and went immediately to the scene (R–126); that he observed the position of the car in the driveway (R–127); that the lights to the car were on when he arrived at the scene (R–127); that the car was blocking about ⅔ of the westbound lane (R–127); that there were three feet of unobstructed roadway in the westbound (sic) lane (R–127); that he asked the plaintiff, David Riddle, how bad he was hurt and plaintiff, David Riddle, did not respond (R–127); On Cross-Examination: That he is detective sergeant and has been with the Bessemer Police Department for 12 years (R–128); that he is fairly familiar with good driving practice (R–129)."

The three questions appear in the pertinent testimony of the witness on cross examination as set out below and are identified by the numbers (1), (2), and (3) which precede the respective questions, to wit:

"Q Mr. Franklin, how long have you been in the Police Department?

"A Twelve years.

"Q And what do you do for the Police Department now?

"A I'm a Detective Sergeant.

"Q You always been a Detective Sergeant?

"A No, sir, just the past two or three years.

"Q You have done, I guess, nearly everything in the Police Department, haven't you?

"A Yes, sir.

"Q Investigated accidents?

"A Yes, sir.

"Q You are familiar with what is good driving practice?

"A Fairly.

"Q You have been involved in how people should drive automobiles and regulated traffic for the Police Department, had something to do with it since you have been with it to some extent, or have you?

"A Yes, sir.

(1) "Q What's the safest way, Mr. Franklin, to turn an automobile around?

"MR. ELLIOTT: May it please the Court, we object to that question, first on the grounds that it's a matter of determination by the Jury, second the law does not impose on Mrs. Franklin to be the safest driver in the world, she's just got to be reasonably good driver. In other words, this is not a matter that would call for any expert opinion. Anybody driving an automobile would have as much knowledge about that as anybody else. Invades the province of the Court and Jury.

"THE COURT: Sustained.

(2) "Q (By Mr. Thomason) Do you know the recommended way to turn an automobile around?

"MR. ELLIOTT: We object to that, may it please the Court.

"THE COURT: Sustained.

"MR. ELLIOTT: Mr. Thomason might recommend one way and I another.

(3) "Q (By Mr. Thomason) Do you know, in the publication the State Department puts out to turn automobiles around they recommend ways to turn one around?

"MR. ELLIOT(T): Object.

"THE COURT: Sustained.

"MR. THOMASON: We except."

Plaintiffs argue that a party to a suit who has been a policeman for twelve years and has the experience shown by the testimony of the witness should be required to testify as to the safest course of conduct available to a person turning a car around to go in the opposite direction. Plaintiffs say that the witness is shown to be qualified to answer and that the court abused its discretion in the rulings complained of.

The three questions clearly call for an opinion of the witness based on his expert knowledge. This court has said:

"[1, 2] A hypothetical question to an expert should incorporate sufficient facts in evidence upon which an expert opinion can be fairly based. Alabama Power Co. v. Bruce, 209 Ala. 423, 96 So. 346; Sovereign Camp, W .O. W. v. Davis, 242 Ala. 235, 5 So.2d 480. The frame and substance of hypothetical questions to expert witnesses is left largely to the sound discretion of the trial court, and the ruling of the court in such matters will not be disturbed unless such discretion is abused. Lehigh Portland Cement Co. v. Dobbins, 282 Ala. 513, 213 So.2d 246." Barfield v. Wright, 286 Ala. 402, 405, 240 So.2d 593, 595.

None of the three questions here contains any suggestion of facts as to surrounding circumstances on which the opinion called for is to be based. The questions as asked hypothecate no facts but call for a naked abstract or theoretical conclusion unclothed with any circumstance related to the issues in the case.

The charge against defendant is that she was guilty of negligent or wanton conduct in operating the automobile. The facts showing the circumstances of the collision are in evidence. The determination of the issues must rest on the circumstances shown by the evidence. Conduct which is safe or is the exercise of reasonable care under some circumstances may not be safe or the exercise of reasonable care under different circumstances. In a case where plaintiff was riding a motorcycle which collided with an automobile driven by defendant, the Court of Appeals said:

"It is a familiar rule that 'care' and 'negligence' are terms entirely relative, varying in degree with every possible change of circumstances. It is manifest that 'ordinary care' may mean very slight care in one state of circumstances, and comparatively very great care in another. One may drive a vehicle over a country road at a rapid rate of speed, and yet be free from every imputation of negligence, while, if he drive at the same rate through the streets of a populous city, he would be guilty of the grossest want of care. Yet, the measure of his legal duty in each case would be the exercise of ordinary care, graduated to suit the hazards of each changing exigency. (Citations Omitted)" Lessman v. West, 20 Ala.App. 289, 291, 101 So. 515, 517.

The language quoted from *Lessman* is taken from the second paragraph of the opinion of this court in Matson v. Maupin & Co., 75 Ala. 312.

If it be assumed arguendo that the witness was qualified to express an expert opinion on the manner in which an automobile may safely be operated, and if other objections to which the questions asked may be subject are not considered, the objections to the questions were properly sustained for the omission of facts on which the opinion of the witness is to be based.

Questions (2) and (3) are subject to the further objections of vagueness and uncertainty as to the meaning of "recommended way" and "the publication of the State Department" on which the opinion of the witness is to be based.

Affirmed.

HARWOOD, BLOODWORTH, Mc-CALL, and JONES, JJ., concur.