From a jury verdict awarding Willie Jackson $2,536.06 for the wrongful conversion of his automobile, the Ford Motor Credit Company (Ford), defendant below, prosecutes this appeal.
Ford through able and experienced counsel states the trial court erred in denying both its motion for judgment notwithstanding the verdict for insufficiency of evidence and also its motion for a mistrial based on improper argument of counsel. Ford additionally contends erroneous jury instructions concerning the appropriate measure of damages for conversion requires reversal of the judgment entered below. We disagree with each of these contentions.
The tendencies of the evidence disclose that Willie Jackson, plaintiff below and appellee herein, is an uneducated man of 56 years. He is unable to read and can write only his name. He has been employed as a laborer for a pecan company for approximately 16 years. He also has worked part time as kitchen help at a country club in Andalusia for approximately 26 years.
Sometime in July, 1974, Jackson purchased a 1974 Mercury Marquis automobile from a Pensacola dealership which assigned the purchase agreement to Ford. The new automobile cost approximately $8,500. As a down payment, Jackson paid $300 cash and traded in a 1972 automobile for which he received $1,736 credit. He signed an agreement whereby he agreed to pay the balance of the purchase price in 36 monthly installments of $230.75.
On March 11, 1975, Ford sent someone to repossess the automobile from Jackson because he was allegedly delinquent in his payments. The individual who repossessed the car for Ford was wearing a badge and gun.
Thereafter, Ford sold the repossessed automobile to the dealer who had originally sold it to Jackson. Proceeds from the sale were credited to Jackson's account, leaving a balance of $250 owed to Ford.
In January, 1976, Jackson filed a complaint alleging the wrongful conversion of his automobile by Ford. In April, prior to trial, Jackson was deposed. At that time, he testified that he had made five or six payments on the automobile. He was unable to remember if he had made the first payment in July or August. He stated payments were due on the 15th of the month. He stated he didn't have any receipts for his payments. He had gotten upset after the car was taken and had thrown everything away.
Trial was had in the Circuit Court of Covington County on November 9, 1976.
Jackson at trial testified that he had made his first payment on July 15. He made his payments by certified check or money order. He had found receipts for three of his payments. Jackson stated that some receipts had been in the car when it was repossessed. He stated that a payment he made in February had been returned to him when Ford repossessed his automobile. Jackson also stated:
 "Q. And you made how many payments that you absolutely remember?
"A. I know I sent eight.
"Q. Do you think you might have sent nine?
 "A. I may have, probably sent nine, but I know I sent eight."
On cross-examination, Jackson explained the inconsistencies in his deposition and trial statements regarding the number of payments he had made by stating that he had "got to checking it over" and determined that he made 8 or 9 payments. He also stated that he made his first payment in August. *Page 994 
Jackson admitted having made one late payment in February. It was this payment that Ford refused to accept. The date on the money order which was returned to Jackson was February 25, 1975.
Other pertinent portions of Jackson's testimony are as follows:
 "Q. Did you, after that Deposition, did you figure up and sit down and figure out how many payments you had made on that car?
"A. Yes.
. . . . .
"Q. All right, how many payments did you make?
"A. I know of . . . I made eight.
. . . . .
"Q. Were you late?
. . . . .
 "A. As far as I know I weren't late because I had paid it up through there.
"Q. You paid ahead of time?
"A. That's right.
 "Q. When you were paying in February, you were paying ahead of time still?
"A. That's right."
Ford's evidence was directly opposed to Jackson's. The contract of sale disclosed payments were to have begun August 1, 1974. Additionally, Andrew Warren, Ford's collection supervisor, testified that Jackson made 5 payments. He stated the money order for the sixth payment was not accepted and was returned to Jackson due to the delinquency of the account. His testimony was based on records maintained by his department.
As previously stated, the jury returned a verdict for Jackson in the amount of $2,536.06. From the trial court's denial of its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, Ford took this appeal.
 I
Ford contends the trial court erred to reversal in denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial for insufficiency of evidence.
Alabama law with regard to the granting of a motion for judgment notwithstanding the verdict is clear. The motion should not be granted if there is any conflict in the evidence for the jury to resolve. Moreover, the existence of such evidence is to be determined by the scintilla rule. Wright v.Packer, Civ. No. 1028, Ala.Civ.App. (April 27, 1977); McLarty v.Wright, 56 Ala. App. 346, 321 So.2d 687 (1975).
Ford contends the evidence adduced at trial does not constitute a scintilla of evidence that Jackson was not in arrears. Ford states that where testimony of a witness is incredible, unbelievable, or inherently improbable, it is to be disregarded as without probative value. King v. Brindley,255 Ala. 425, 51 So.2d 870 (1951); American National Bank TrustCo. v. Powell, 235 Ala. 236, 178 So. 21 (1938); Peters v.Southern Railway Co., 135 Ala. 533, 33 So. 332 (1902).
Albeit Ford's statement of the legal principle is valid, the principle has no applicability to this case. We believe the cases upon which Ford has relied are distinguishable from that presently before this court. In King and Peters, supra, the Supreme Court of Alabama refused to hold credible testimony which undisputed objective facts proved invalid.
Thus, the court, after discussing what the evidence disclosed with regard to the condition of two automobiles and their passengers subsequent to a collision between the vehicles, stated that one party's testimony that one of the vehicles was traveling 70 m.p.h. was unbelievable. Similarly, in Peters, the court failed to attach any weight to the plaintiff's testimony which sought to place in issue his contributory negligence concerning an injury he sustained when walking across railroad tracks. The plaintiff stated that he had stopped, looked, and listened before crossing the tracks. The court, after a statement of the distances and speeds involved, noted that a simple mathematical calculation revealed that the *Page 995 
plaintiff could not have stopped and looked for the train, made any diligent attempt to get off the tracks, and still have remained on them upon the arrival of the train. Hence, his testimony was insufficient to create a material conflict in the evidence.
In this instance, there are no objective facts which conclusively establish the occurrence or nonoccurrence of the events in question. Hence, the holding of King and Peters,supra, are inapposite.
Moreover, we do not equate Jackson's testimony with that of the defendant in American National Bank Trust Co., supra. In that case the defendant testified that prior to her seventeenth birthday she had earned $60,000 by selling newspaper clippings in Mobile in the early 1900's. The Supreme Court of Alabama stated that such testimony was so unrealistic that no credit could be attached to such a statement.
In this case, we have testimony which neither can be disproven through application of objective facts nor which is so inherently improbable or unreasonable as to be without probative value as a matter of law. Jackson merely testified that he had made the automobile payments in question. Although his testimony on direct and cross-examination was contradictory, such contradictions do not in this instance make the testimony unbelievable as a matter of law so as to require reversal by this court. The question of which part of Jackson's testimony was believable was for the jury. Zemczonek v.McElroy, 264 Ala. 258, 86 So.2d 824 (1956); see SemmesNurseries, Inc. v. McVay, 279 Ala. 42, 181 So.2d 331 (1965).
Ford also contends that Jackson failed to establish a prima facie case of conversion. Ford states Jackson admitted that he made a late payment in February and failed to make a payment in March of 1975. Under the security agreement he executed with Ford, such action on his part would constitute default and entitle Ford to possession of the car. Hence, Ford had a superior right to the property. We cannot agree.
Jackson also testified that he made eight payments, the first one having been in July of 1974. Under this view of the evidence, the payment rejected by Ford would have been for March. The payor will not be placed in default by the payee's rejection of a payment which has been tendered on time. Thus, one reasonable interpretation of the evidence disclosed that Jackson was not in default, had a superior right to possession, and consequently, did establish a prima facie case of conversion. Ford's contentions with respect to the sufficiency of evidence are therefore without merit.
 II
Ford asserts opposing counsel's improper closing argument requires reversal.
Ford's argument is directed at the following remarks made by counsel for Jackson:
 "All Willie wants is his money back and that is what they [Ford] should give him. I was the one that said they should give him more because they mistreated him and they should not be allowed to mistreat people and they need a lesson to keep them from mistreating people.
 "He [Ford's counsel] said they watch their public relations, they don't do these things. John Givhan is sitting back there with a case against them Thursday for the same . . ."
John Givhan is a local attorney.
Ford immediately moved for a mistrial, which motion was denied by the trial court. The court then instructed the jury as follows:
 "Members of the Jury, . . . I want to tell you at this time that any consideration of any other pending law suit would be highly improper on your part. It is not evidence for you to consider. You would not be properly discharging your duties if you did consider it. And I am instructing you at this time to not allow that consideration to influence your verdict in any manner and I deny the Motion for Mistrial. You may resume your argument."
In determining whether the argument of counsel is so prejudicial as to justify *Page 996 
a new trial, each case must be decided upon its own particular facts. Daniel Construction Company v. Pierce, 270 Ala. 522,120 So.2d 381 (1960). Instructions by the court telling the jury to disregard the objectionable comments may be sufficient to overcome any prejudice arising from such comments. Magnusson v.Swan, 291 Ala. 151, 279 So.2d 422 (1974); National Sec. Fire Cas. Co. v. Hodgin, 55 Ala. App. 268, 314 So.2d 871 (1975).
Here, we need not set forth the entire argument of counsel. We have examined the entire record; and giving due regard to the emphatic instructions given the jury to disregard the improper comments, we perceive no ineradicable injury to Ford.
Where the trial court has denied the motion for a mistrial based on improper argument, its determination is presumed correct. National Sec. Fire Cas. Co. and Daniel, supra. The trial court's denial of a motion for mistrial premised on improper argument of counsel, where the court has instructed the jury to disregard the argument, has been sustained by the Supreme Court of Alabama in other decisions where the improper comments were more prejudicial than those made by Jackson's counsel herein, Birmingham Electric Co. v. McQueen, 253 Ala. 395,401, 44 So.2d 598, 603 (1950), where in a personal injury action, counsel for plaintiff argued:
 "`I was surprised when I found out that he wasn't killed. I will tell you, gentlemen, you go out there and do your duty and render a verdict for the amount which we are asking for in that complaint and you will serve your county here and you will stop the headlines of the papers in Birmingham and other papers of people killed and run over by street cars in Birmingham.'"
See also Birmingham Electric Co. v. Wood, 222 Ala. 103,130 So. 786 (1930), where counsel read facts from a case similar to the case on trial, the amount of the verdict, and comments of the supreme court concerning the verdict; Tennessee River Nav. Co.v. Walls, 209 Ala. 320, 96 So. 266 (1923), where plaintiff's attorney expressed the opinion that a verdict should be granted for "plaintiff for a substantial amount, and two previous juries which have tried this case agreed with me."
Jackson's counsel's objectionable comments served no legitimate purpose, and it is regrettable that they were made. However, in this instance, we are unable to say the prejudicial effect of the challenged comments was not eradicated by the prompt and emphatic instructions of the trial court to disregard such argument.
 III
Ford also contends the trial court erred in its instructions to the jury concerning the measure of damages for the conversion of an automobile. We agree.
The trial court instructed the jury as follows:
 "In an action for conversion where the Plaintiff has lost his property wholly by conversion and the value of the property has not fluctuated, the measure of damages is the reasonable, fair, market-value of the property at the time and place of the conversion with interest at the rate of six percent from the time of the conversion to the time of the trial."
However, the measure of damages for conversion is the difference between the reasonable fair market value of the item converted and the balance due on the mortgage debt at the time of conversion, plus interest from the date of conversion.Parker v. Sutton, 47 Ala. App. 352, 254 So.2d 425, cert. denied,287 Ala. 738, 254 So.2d 431 (1971). Thus, the trial court's instructions were erroneous. However, such error does not mandate reversal, for the jury returned a verdict for a lesser amount than would have been sustainable had the appropriate instructions been given.
The sales agreement showed the new automobile's original selling price to be $8,500. Also, testimony disclosed approximately $200 in repairs were required at the time of repossession. Thus, at the time of conversion, one reasonable view of the evidence would value the automobile at $8,300, less depreciation. *Page 997 
The balance owed on the car after Jackson's down payment and trade-in was $6,699. Reducing this amount by $1,440, an approximation of the amount the principal was reduced by 8 or 9 payments, leaves a balance of $5,259. Fair market value of the automobile ($8,300) less the amount owing on the debt ($5,259) reveals Jackson's interest at the time of conversion to have been $3,041, less depreciation. Since the jury's verdict was for $2,536.06, we perceive no harm accruing to Ford by virtue of the erroneous instruction. The error is therefore harmless and does not constitute grounds for a new trial. Rule 61, ARCP.
AFFIRMED.
BRADLEY, J., and PAUL, R.C.J., concur.