## DAN WOYAK v. HARRY M. KONIESKE.
## DOROTHY WOYAK v. SAME.[1]

June 27, 1952.

Nos. 35,682, 35,683.

[1]Reported in 54 N. W. (2d) 649.

214

*Freeman, King, Larson & Peterson* and *M. W. Gaughan,* for appellant.

*Dancer, Montague, Applequist & Lyons,* for respondents.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for a new trial.

This case arises out of a collision between a Studebaker pickup truck owned and driven by plaintiff Dan Woyak and a Plymouth automobile owned and driven by defendant. Two cases involving the recovery of damages, one by Dan Woyak and the other by his wife, Dorothy Woyak, were consolidated for trial. Inasmuch as both cases involve the same question here, we shall, for convenience, refer to Dan Woyak as plaintiff.

The collision occurred near an intersection where trunk highway No. 61 intersects trunk highways Nos. 33 and 210. At the point involved, highway No. 61 is a concrete three-lane highway running from the Twin Cities to Duluth. From Duluth, a person using highway No. 61 travels generally in a westerly direction until the locale of the accident here involved is reached. At that point, the highway branches into two sections. One branch (highway No. 61) curves gradually to the south, while the other branch (highway No. 210) continues in a westerly direction. The angle between the highways is some 15 or 20 degrees, and the triangular space thereby formed constitutes a traffic island over which motorists may travel from one highway to the other. The distance from the apex of this triangle formed by the angle between these highways to the grass line which forms the base at its western end is approximately 133

feet, and the base is 28 feet 6 inches across. At a point about the center of the base line there is a large directional sign facing east.

As highway No. 61 approaches the scene of the accident from the other direction and at about the point where it begins to curve to the east, it makes a junction with highway No. 33, which runs in a generally northerly direction toward Cloquet.

Plaintiff lived on a farm near Cloquet. About 12:30 p. m. on the day involved, he and his wife left their farm home and went to a small town (Mahtowa), which is a short distance southeast of the intersection involved, for the purpose of selling four Collie puppies at an auction sale held there regularly on Tuesdays. They were driving their Studebaker pickup truck. They succeeded in selling only one puppy. During the afternoon they started to go home. The three remaining puppies were in two boxes in the rear of the truck covered with a canvas. In returning, they traveled on highway No. 61, intending to turn north at the junction with highway No. 33. A heavy wet snow was falling. Their windshield wipers were in operation. They missed the turn at the intersection, and from this point on the testimony of plaintiff and his wife and that of defendant and his corroborating witness is in direct conflict.

Plaintiff and his wife testified that after missing the turn they continued on highway No. 61 to the junction thereof with highway No. 210, looked both ways and saw no car coming from either direction, and then made a left-hand turn and stopped on the island described above about 15 feet from the marker and completely off the highway. They intended eventually to enter highway No. 210, to travel west until they reached the intersection with highway No. 33, and then to turn north onto No. 33. They testified that the puppies had become uncovered and that, after stopping the pickup, plaintiff went to the back of the truck, covered up the puppies, and re-entered the cab. He then took a plug of tobacco from the glove compartment and had just taken a chew when they were struck broadside by defendant's car, which came from the direction of Duluth, left the highway, and ran into their truck while it was standing still. Plaintiff was not aware of defendant's car until he

heard his wife exclaim that she saw a car approaching from behind. His wife testified that she saw it approaching about half a block away, that it was traveling in a normal manner, and that when she next saw it it was bearing down upon them.

Defendant, on the other hand, testified that as he approached the intersection from the east on highway No. 61 he saw two cars approaching him, traveling more or less abreast of each other, one of which was plaintiff's pickup, which was in the middle lane; that as he approached these cars plaintiff turned into his lane; that he then "dynamited" his brakes and turned to the right; and that at the same time plaintiff turned to the left and the collision followed.

Belford G. Wallen, a witness called by defendant, testified that he had followed plaintiff's truck before the accident; that plaintiff made a sharp left turn into the lane of oncoming traffic; and that he (Wallen) was in the act of passing on the right side of plaintiff's truck at the time the accident occurred. He did not see the truck stop prior to the collision.

The cars came to rest about three feet apart. After the accident, skid marks showed that plaintiff's truck had been pushed sideways 15 or 20 feet.

Unretouched photographs of the automobiles were admitted in evidence. Plaintiff thereupon called one Howard Almy, who has been in the business of selling and servicing automobiles since 1914. Most of his work had been in the service department. He had been with Shirley Motor Company of Duluth since 1936. The company handles Plymouth cars, among others. Almy testified that in his work he had seen a great many wrecked cars and had participated in or supervised their repair. After examining the photographs, without objection he was permitted to state his opinion as to the part of the Plymouth car which collided with the Studebaker, as follows:

"Q. Now, from seeing those photographs and from your inspection of those photographs, I will ask you whether or not you have an opinion as to what part of the Plymouth automobile collided with what part of the Studebaker truck?

"A.  Yes, I have.

"Q.  And what is that opinion?

"A.  Well, the Studebaker truck was struck on the right side, first contact was made near the rear of the front wheel and the damage is covered over the area of the front wheel, front fender, right cowl section and the right door. The contact was made from the front end of the Plymouth and, in my opinion, it was not directly right angles. It was, I would say, a little at an angle from the right. The right front of the Plymouth probably contacted first, but not too severe, at almost right angles."

Based on his examination of the photographs, he was then asked if he had an opinion as to whether the Studebaker was moving at the time of the impact. The testimony is as follows:

"Q.  Now, from your examination of those photographs and based on your knowledge and experience with damaged automobiles, do you have an opinion as to whether or not the Studebaker truck was moving at the time of the impact.

"Mr. Freeman:  That is objected to as lack of foundation.

"The Court:  Do you wish to inquire?

"Mr. Freeman:  No, your Honor.

"The Court:  What I have in mind, possibly the photographs themselves are the best evidence.

"Mr. Montague:  Well, this question is directed to what I would think is an expert opinion on an interpretation of the photographs.

"The Court:  Overruled, an exception will be noted.

"Q.  Do you have an opinion, Mr. Almy?

"A.  I do.

"Q.  And what is that opinion?

"A.  In my opinion, the Studebaker car was not moving.

"Q.  The Studebaker car was not moving.  Now on what, Mr. Almy, do you base that opinion?

"Mr. Freeman:  It will be understood, your Honor, that I am objecting to this line of testimony?

"The Court: Yes. Overruled and exception will be noted to the entire testimony in regard to the question as to whether or not the Studebaker was moving. .

\* \* \* \* \*

"A. Well, the damage to the Studebaker is entirely crushing damage. From looking at the photograph there is no side-swipe damage here. The damage to the Plymouth shows no side-swipe damage. The Plymouth, even in its wrecked condition, the grill work and so on is right straight in line down the center of the car. Had the Studebaker been moving there would have been swipe one way or the other on the Plymouth. It would have swiped one way or the other and thrown this grill work to one side of the center line. It has not done so.

"Q. You say there is no evidence of side-swipe damage to the Studebaker?

"A. That is right.

"Q. What would constitute side-swipe damage?

"A. Well, there would be scratches in the paint and so on, be roughed up.

"Q. Could you take one of those photographs, whichever best illustrates it, of the Plymouth car and step down before the jury, Mr. Almy, and show what you mean by the alignment that you speak of in the front of the Plymouth?

\* \* \* \* \*

"A. This is the center of the grill on the Plymouth. These two horns are mounted square in the middle of the radiator. Carry a line from right between the two horns, be hitting the cowl section right back where that hood is. That is right in the center. There is no misalignment, it is a perfectly straight line, which would indicate there was no side-swipe damage, nothing in the grill work to one side or the other.

"Q. Now, is there anything in connection with the metal work back of the bumper of the Plymouth which indicates there was no side-swipe or no movement?

"A. Yes, this area is the front gravel shield. That is exposed on this side and over here it isn't. That indicates it was hit more on the right side than on the left, which makes my opinion that it did not hit at direct right angle, from that evidence here."

On cross-examination, defendant moved to strike Almy's testimony for lack of foundation, based on the following examination:

"Q. Mr. Almy, this Studebaker was almost a complete wreck, was it not?

"A. From what I understand. I didn't see the car itself.

"Q. You don't have the Studebaker agency?

"A. No.

"Q. You understand it was almost a complete wreck?

"A. I understand it is severely damaged. I understand the frame went into it.

"Q. Well, have you made an inspection of it?

"A. No, I have only seen the photograph.

"Q. Never saw the car itself?

"A. Never saw the car itself.

"Q. And so you can't tell from here whether that frame was damaged?

"A. Well, I would imagine it would be.

"Q. Well, we can't imagine.

"A. The picture shows the damage.

"Q. Can you tell from that picture whether or not the frame was damaged?

"A. Well, I would say it was.

"Q. Well, you used the word 'imagine'.

"A. Well, I take that back.

"Q. You are just assuming it was damaged?

"A. Well, basing my opinion on similar accidents, and I have seen thousands of them, I would say definitely it was damaged.

"Q. You never saw the car at all?

"A. No, sir.

"Q. You never inspected the car other than to see a picture of it?

"A. No.

"Q. And your testimony is based solely upon what you see in these pictures?

"A. Yes, and experience in looking at them.

"Q. You don't even know whether the frame was damaged and don't even know how much in dollars and cents damage was caused to that car?

"A. That is right, I don't.

"Mr. Freeman: I move this witness' testimony be stricken out of the record for lack of foundation.

"The Court: I think it will be overruled and exception noted."

Thereafter, the witness was exhaustively cross-examined concerning the basis for his opinion. He reiterated what he had said about "side-swipe" and added the following:

"Q. Well, let me ask you this: If that car was only going ten miles an hour and was hit on the side and was hit by another vehicle going thirty or thirty-five miles an hour and shoving this Studebaker truck some twenty feet, you would not expect the damage to be any different?

"A. I would expect to see side-swipe across the Plymouth and the Studebaker.

"Q. You would expect that Studebaker forward motion to stop almost immediately?

"A. No, I can't conceive of it. I can't see it stop immediately.

"Q. I said almost immediately?

"A. If it were going ten miles an hour and the other car thirty-five, the Studebaker would still have sufficient momentum to take that grill work and push it to one side. It hasn't done it."

He also added that there was no evidence of any damage to the rear fender of the truck, indicating that the truck had not scraped the front part of the Plymouth car.

The only question raised by this appeal is whether it was reversible error to admit the opinion of the witness Almy, based upon the

foundation laid here, as to whether plaintiff's truck was moving at the time of the impact.

■ Whether a sufficient foundation has been laid to qualify a witness as an expert ordinarily is a question for the trial court. We have repeated this rule so frequently that citation of authorities seems superfluous. 2 Dunnell, Dig. & Supp. § 3335. In Detroit Lakes Realty Co. v. McKenzie, 204 Minn. 490, 493, 284 N. W. 60, 62, we said:

"* * * Whether a witness offered as an expert possesses the requisite qualifications involves so much of the element of fact that great consideration must necessarily be given to the decision of the trial judge; and his ruling will be sustained unless it is made clearly to appear that it was based upon some erroneous view of legal principles or that the ruling was not justified by the evidence presented to the judge at that time."

Wigmore, in his work on evidence (Vol. 2 [3 ed.]), § 561, as we pointed out in Palmer v. Order of U. C. T. 191 Minn. 204, 253 N. W. 543, suggests an absolute rule under which the ruling of the trial court as to the qualifications of a particular witness is not subject to review at all.

While we have not seen fit to adopt such an ironclad rule of finality, it is clear that the trial court's ruling will, and should be, sustained unless it is made to appear that the ruling was based on some erroneous view of the law or that it clearly was not justified by the evidence.

■ Where the opinion of a witness is elicited, the proper test to determine his qualification is whether his knowledge of the matter in relation to which his opinion is sought is such that it will probably aid the trier of the question to determine the truth. Palmer v. Order of U. C. T. and Detroit Lakes Realty Co. v. McKenzie, *supra;* 3 Jones, Evidence (2 ed.) § 1314; 7 Wigmore, Evidence (3 ed.) § 1923; 2 Dunnell, Dig. & Supp. § 3334.

■ On the other hand, a witness called as an expert should not be permitted to express his opinion on a matter on which the

opinion cannot aid the trier of facts in determining the truth of the fact issue. If the jury is as competent to determine the fact issue as the expert, ordinarily his opinion will be of no assistance and should not be admitted. See, Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629, where many of our cases on this subject are collected.

■ The fact that the opinion of an expert bears directly on the issue to be determined by the jury does not render it inadmissible. Spino v. Butler Brothers, 113 Minn. 326, 129 N. W. 590; Lestico v. Kuehner, 204 Minn. 125, 283 N. W. 122; Piche v. Halvorson, 199 Minn. 526, 272 N. W. 591; 2 Dunnell, Dig. & Supp. § 3326.

Tested by these rules, was the witness Almy sufficiently qualified to express the opinion sought? Defendant relies principally on Roberts v. Koons, 230 Iowa 92, 296 N. W. 811, where the court held that garagemen who examined the wrecked vehicles involved in a collision were not qualified to give an opinion as to the speed of the moving automobile at the time of its collision with the parked truck based solely on the condition of the vehicles as seen after the accident; Oyster v. Dye, 7 Wash. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720, where the court excluded the opinion of an auto dealer as to speed based on an examination of photographs of the automobile involved; Faris v. Burroughs Adding Machine Co. 48 Idaho 310, 282 P. 72, where the court refused to permit mechanics employed in a garage to testify from their examination of one of the cars involved in a collision as to the speed of the two cars when the accident occurred; and our case of Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629.

We do not believe that these cases are in point. Cases involving opinions as to the speed of colliding automobiles, based on an examination of the wrecked automobiles or photographs thereof, involve an element of speculation and conjecture not present in determining whether a car hit almost broadside by the front end of another car was standing still or moving. A person experienced in repairing damaged automobiles may conceivably be able to determine from an examination of an automobile whether there was

any movement sideways under such circumstances, whereas he would not be able to tell from a similar examination how fast two moving automobiles were traveling at the time of impact. The explanation of the witness Almy of the basis for his opinion was thoroughly explored on cross-examination. Upon a close examination of the record, we are convinced that his explanation and opinion on the subject involved could well have been of great assistance to the jury in the determination of the crucial issue involved.

Nor is Beckman v. Schroeder, *supra*, of any help to defendant. In that case, a deputy sheriff and a highway patrolman were called as expert witnesses and asked for their opinions as to the movement of two colliding cars, based upon their observation of the skid marks, debris on the highway, location of the cars, and other surrounding physical facts which they observed after the occurrence of the collision. We recognized the rule that the qualifications of the witnesses as experts was a matter largely within the discretion of the trial court and held that they had the necessary qualifications to testify. In that case, the objection to their opinions was not limited to the foundation, as in this case. The objection was based on the ground that the questions called for a conclusion of the witness, based on speculation and conjecture, and that it invaded the province of the jury. After holding that the witnesses had the necessary qualifications, we held (224 Minn. 385, 28 N. W. [2d] 637) that the opinions were not admissible for the reason that "the jury was as competent to determine where this collision took place as the experts"; hence, that the opinions would be of no value to the jury in determining the crucial question in the case. We reviewed many of the cases on this subject and distinguished Lestico v. Kuehner, 204 Minn. 125, 132, 283 N. W. 122, 126, which is more in point here. In the latter case, we held that it was error to exclude the opinion of a mechanic with "lots of experience with tires, due to wrecks," whether a tire was suddenly deflated or the air was gradually let out, and said:

"* * * Mechanics whose business it is to repair tires, especially those emerging from wrecks, have a broad experience far beyond the ordinary. Thereon, as to causation, they may sometimes come to worthwhile conclusions based upon the inherent evidence of damaged casings."

Much the same might be said here respecting an examination of the damaged cars, particularly where, as here, the opinion relates to whether the car made any side movement after the collision.

Even in cases involving speed, opinion evidence is not always to be excluded. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371.

Nor do we believe that foundation is lacking because the opinion of Almy was based on photographs instead of an examination of the wrecked automobiles. It is common practice for medical experts to base their opinions upon X rays and other similar descriptive evidence or upon hypothetical questions. Defendant was given free range to cross-examine regarding the accuracy of the photographs. The fact that the opinion was based on photographs instead of an examination of the automobiles might conceivably affect its weight, but would not render it inadmissible because of a lack of foundation if the witness were otherwise qualified and the photographs were sufficiently descriptive and clear so that they presented the facts necessary to enable the witness to form an opinion with the necessary degree of accuracy.

The foundation for the opinion was sufficient; hence, there must be an affirmance.

Affirmed.