87 So.2d 642

### MERCURY FREIGHT LINES, Inc.

v.

### Milton PHARO.

### 6 Div. 16.

Supreme Court of Alabama.

May 24, 1956.

Ben F. Ray and Ferris S. Ritchey, Jr., Birmingham, for appellee.

Maurice F. Bishop and Robt. S. Richard, Birmingham, for appellant.

LAWSON, Justice.

This is a suit by Milton Pharo against Mercury Freight Lines, Inc., a corporation, to recover damages for an assault and battery alleged to have been committed on him on August 21, 1953, by Durwood J. Sharron, an agent or employee of defendant corporation, while acting in the line of his duty and within the scope of his employment as such agent or employee.

The cause was tried upon the one count of the complaint and the defendant's plea of the general issue in short by consent in the usual form. The trial resulted in a

verdict in favor of the plaintiff for $10,000. The judgment was in accord with the verdict. The defendant's motion for new trial being overruled, it has appealed to this court.

The most general argument in brief for appellant restricts our review on this appeal to a narrow compass. The only contention, it seems, is that the trial court erred in overruling those grounds of the motion for new trial which, in effect, took the point that the verdict and judgment are contrary to the great weight of the evidence.

It is without dispute that on the afternoon of August 21, 1953, Sharron inflicted serious injury to plaintiff with a knife at the defendant's freight terminal in the city of Birmingham. The cut extended from plaintiff's left forehead through the eyeball of his left eye, through his nose to the right cheek. As a result of the cut plaintiff has lost all vision in his left eye and he is permanently scarred.

But appellant argues that the verdict and judgment against it should have been set aside because the evidence fails to show that Sharron at the time of the difficulty with plaintiff was acting within the line and scope of his employment.

The law of respondeat superior as applied to assault and battery committed by the servant upon a third person has been frequently considered and carefully announced by this court. In Seaboard Air Line R. Co. v. Glenn, 213 Ala. 284, 285, 104 So. 548, 549, we said in part as follows:

"* * * In general phrase, the wrongful act must be done while acting within the line and scope of the employment. If so, the master is liable, whether the injury results from negligence, wantonness, or willfulness of the servant. In extending the liability to a willful wrong, the motive behind the act does not defeat liability. If, therefore, while in the performance of a duty committed to the servant, he takes occasion to perform it in such rude or violent manner as to give vent to personal spite or ill feeling toward another by committing an assault upon him, the master is liable. Malice in law is the intentional doing of a wrongful act to the injury of another. A willful wrong may, and usually does, include malice in this legal sense. It follows that malice on the part of the servant, whether arising from general evil disposition or from personal ill will toward another, does not relieve the master from liability. The rule is based upon the broad principle that in committing the performance of a definite work to another the act of the servant in doing that work is the act of the master. The policy of the law is to hold the master responsible for the torts of the servant in such case, although in fact the tort was committed against the will of the master and in violation of his rules or instructions.

"But outside of the scope of employment the servant is his own master, responsible alone, as other persons, for his wrongs. To bind the master the abuse must be perpetrated 'in the line of the duties assigned' to the servant; the act must be 'done in and about the business or duties assigned' to him; must be 'while acting within the range of the authority of the employment'; must be 'fairly incident to the employment,' within the zone of duty measured by the work committed to him."

The application of the rule is illustrated in the cases cited in Seaboard Air Line R. Co. v. Glenn, supra.

At the time of the difficulty with the plaintiff Sharron was a stockholder and vice-president of the defendant corporation, in charge of the hiring and discharge of truck drivers. The amount of the compensation to which the truck drivers were entitled was subject to Sharron's approval in some respects.

The plaintiff had been in the employ of the defendant company for approximately

four months prior to the time he was injured. He had been employed by Sharron and had leased his truck to the defendant corporation to be used in connection with trailers owned by the corporation in the hauling of freight. The tendencies of the evidence offered by the plaintiff are to the effect that some time between 8:30 and 9:00 on the morning of August 21, 1953, the plaintiff drove his truck and the trailer attached thereto into the defendant's motor terminal at Birmingham with a load of freight which he had brought in from Mobile. He informed Mr. Sharron of the fact that he was claiming some overtime to which he was entitled. Sharron thereupon advised plaintiff that if he put in a claim for the overtime he would be fired. Plaintiff made his claim for overtime and then turned in his trip tickets upon being informed by Sharron that he was fired. Plaintiff left the terminal, went to his home where he had breakfast. After leaving his home he went to one or two other motor freight transportation companies seeking employment and to his union hall, where he was advised that under the terms of his contract Mr. Sharron was without authority to discharge him. After receiving this information plaintiff went by the office of the defendant company, located in a building some distance away from the motor terminal, where he made inquiry concerning his check. Without waiting for his check, although he was informed that it was forthcoming, plaintiff returned to the freight terminal some time between 1:00 and 1:30 of the same day. Upon seeing Mr. Sharron he advised him that he would like to talk with him. Sharron was busy and told plaintiff he would see him later. Plaintiff testified: "After that, I went out and stood at the end of the dock. Mr. Sharron come walking up to me and asked me what he could do for me and I told him I had been to the union hall and they said he had to pay me for unloading time, and he couldn't lay me off, and he said, he was running this God damn place, and went to his pocket, and come out with a knife."

■ Of course, there are tendencies of the evidence offered on behalf of defendant which are not in accord with the version related by the plaintiff. But under the circumstances which we have related above, upon the following authorities from this court we are clear to the conclusion that the evidence was amply sufficient to support a finding that the defendant corporation was liable for the acts of Sharron under the doctrine of respondeat superior. Gassenheimer v. Western Ry. of Ala., 175 Ala. 319, 57 So. 718, 40 L.R.A.,N.S., 998; Case v. Hulsebush, 122 Ala. 212, 26 So. 155; Jebeles & Colias Confectionery Co. v. Booze, 181 Ala. 456, 62 So. 12; Hardeman v. Williams, 169 Ala. 50, 53 So. 794; Birmingham Macaroni Co. v. Tadrick, 205 Ala. 540, 88 So. 858.

■ The appellant next insists that the evidence shows that Sharron acted in self-defense and for that reason the verdict and judgment should have been set aside on motion for new trial. True, there is evidence in the record offered on behalf of the defendant which tends to show that Sharron acted in self-defense. However, there is evidence offered on behalf of the plaintiff which is to the contrary. We are not going to encumber this opinion with a detailed recitation of the evidence as it relates to the encounter. Suffice it to say that we have in conference fully and carefully considered all of the evidence and are not persuaded that, after allowing all reasonable presumptions in favor of the correctness of the verdict, that the preponderance of the evidence against the verdict is so decided as to clearly convince us that it is wrong and unjust. Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738. The court and jury heard and saw each of the witnesses testify, and an examination of the record persuades us that this was a peculiar advantage upon the issues of fact for determination. Verdicts are not to be set aside merely because they do not correspond with the opinion of the court or are against the great preponderance of the evidence. Bates v. Chilton County, 244 Ala. 297, 13 So.2d 186.

We have said that the correctness of the verdict is strengthened when the pre-

siding judge refuses to grant a new trial. Simpson v. Birmingham Electric Co., 261 Ala. 599, 75 So.2d 111.

After studied consideration, we are not willing to pronounce our judgment, based only on the printed page, to be so superior to that of the jury and the trial judge as to supersede their views of the matter and substitute our own for theirs. We do not think that the action of the trial court in denying the motion for new trial on the asserted grounds should be here overturned. The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.