237 So.2d 855

**CAROLINA CASUALTY INSURANCE COMPANY, a Corporation, and Stokley "Tip" Chambers, Individually and d/b/a Stokley Chambers & Co., Insurance Adjusters**

v.

**James C. TISDALE.**

**4 Div. 5.**

Court of Civil Appeals of Alabama.

April 8, 1970.

Rehearing Denied April 29, 1970.

Albrittons & Rankin, Andalusia, for appellants.

Tipler, Fuller & Melton, Andalusia, for appellee.

WRIGHT, Judge.

Suit was filed in Circuit Court of Covington County, Alabama, by appellee, James C. Tisdale, against appellants, Carolina Casualty Insurance Company and "Tip" Chambers. The complaint consisted of one count charging appellants with conversion of a tractor-trailer rig belonging to appellee. Damages were claimed in the amount of $25,000. Jury verdict against appellants was returned and judgment entered in the amount of $4,000. Motion for new trial was denied. Appeal was duly taken and comes here on 12 assignments of error.

The first assignment of error is addressed generally to the denial of the motion for new trial. The next 5 assignments are addressed to the denial of the motion for a new trial on stated grounds. These grounds charge collectively that the verdict of the jury was contrary to the evidence, its weight and preponderance and was excessive. It is contended by appellant that the verdict is contrary to the law.

The impact of appellants' argument in brief as to the first 5 assignments of error is that the verdict is contrary to the evidence and law. We shall consider them as one assignment of error.

Appellee was in the trucking business and owned a tractor-trailer unit, commonly referred to as a "rig." This "rig" was insured by appellant, Carolina Casualty Company. On March 17, 1967, the rig was wrecked in Perry, Florida. Appellee was informed of the wreck at his home in Andalusia, Alabama. He immediately notified his insurance broker in Andalusia there had been an accident and that he was going to the scene and would be in touch with him. Upon arriving in Florida appellee arranged for the safety and transfer of the cargo and removed the damaged rig to Perry Truck & Tractor Company in Perry, Florida.

The date of the accident, appellant Chambers, an independent insurance adjuster, was assigned by Carolina Casualty Company to adjust the collision loss of appellee. Chambers located the rig and talked by telephone with the manager of Perry Truck & Tractor Company and with appellee, who was in the manager's office at the time. It was in this conversation that appellee, when informed the rig was to be taken to Birmingham for repairs, allegedly told Chambers he did not want the repairs to be done by the shop in Birmingham ordinarily used by Chambers. Appellee testified that he stated to Chambers to let the rig alone, he did not "want that bunch up there messing with it."

Chambers denied such statement was made to him and that arrangements were made for the rig to be prepared for towing to Birmingham. He sent a wrecker and crew from Birmingham to tow the rig back to Birmingham. The wrecker arrived in Perry in the evening, hooked to the rig, and brought it to Birmingham, arriving there on Sunday morning.

Appellee stated that he informed the Florida Highway Patrol to stop anyone moving the trailer and hold them for theft. On Monday morning, appellee found the rig had been taken away from Perry Truck & Tractor Company. He called the claims representative of Carolina Casualty in

Jacksonville, Florida and informed him he could not settle his claim with Chambers and asked that another adjuster be assigned. The appellant company refused.

Appellee then complained to the Insurance Commissioner in Montgomery, who relayed the complaint to Chambers. Appellee then proceeded to Birmingham, located his truck at the wrecker company's yard and learned the trailer had been placed with Fruehauf Corporation for repairs. He stated he contacted Chambers by telephone and asked him to come out to the truck and discuss the estimates for repair. Chambers allegedly refused to come and refused to allow the truck to be taken to the White truck place. Appellee stated he then attempted to contact Chambers in the days following but he was always out and unavailable. He finally located him at home at night and told him he was going to move the truck. Appellee states the following was said to him by appellant Chambers, "you just as well make up your damn mind that Truck Auto Repairs or Car Renovators one are going to fix that truck." Appellee in reply said, "I don't know so much about that." With this exchange, appellee immediately hauled his tractor away to Andalusia at a cost of $281.00.

Appellee's trailer was repaired by Fruehauf and the repairs were accepted by appellee. Appellee signed a release on the trailer which recognized settlement in full for loss and damage arising from the wreck. The release contained in part the following, "In consideration of such payments, said company is hereby discharged and forever released from any and all further claim, demand or liability whatsoever for said loss and damage, under or by reason of said policy." It is contended by appellants that these words constituted a release to appellants for any alleged conversion as well as payment under the policy.

■ We cannot agree that such is the effect or obvious intent and purpose of the release. It is clear that the release applied solely to "loss and damage, under or by reason of said policy."

All of the material parts of appellee's testimony were denied by Chambers. Chambers stated that the rig was picked up with appellee's permission and its return was never requested. There was evidence by Chambers that appellee objected to repairs under one estimate, and that it was discarded and another obtained.

Chambers did not specifically deny making the statements charged to him by appellee as quoted above.

Arbitration of the claim for damage to the tractor was attempted but not completed. A draft, for some amount, representing the loss on the tractor was forwarded by the Carolina Casualty Company to appellee. The draft was not cashed and was returned to appellants the day of the trial.

It appears that appellants throughout their argument have difficulty separating the rights and liabilities under the policy of insurance, and those liabilities charged in the suit for conversion. They are totally separate and distinct. While appellants had contractual duties and obligations to appellee to perform under their policy of insurance, they were not entitled to approach these duties in such a manner as to breach rights of appellee in the performance. The rights of appellee referred to are those of ownership and possession in personal property.

The insistence by appellants that there was no evidence or insufficient evidence, to support the verdict and judgment insofar as the conversion by appellants is concerned is, in our opinion, not well taken. The evidence was obviously in conflict as to the acts of appellants in the premises, but we are clear to the point that there was sufficient evidence for the jury's consideration and finding that such conversion occurred.

The position of appellants appears to be that since all of their acts were part and parcel of an effort to adjust or repair appellee's rig, and there was no intent and purpose toward denying appellee's title or destruction of his property, no right of action could arise, and even if so, good intentions should be a complete defense. This is not the law of conversion. To paraphrase a well-known cliche, the road to the courthouse may be paved with good intentions. As stated by the Supreme Court in Long-Lewis Hardware Co. v. Abston, 235 Ala. 599, 180 So. 261, and quoted in Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 571, 206 So.2d 371, 373, "It has been held by this court that the 'fact of conversion does not necessarily import an acquisition of property in the defendant.'" Howton v. Mathias, 197 Ala. 457, 73 So. 92, 95. "The conversion may consist, not only in an appropriation of the property to one's own use, but in its destruction, or in exercising dominion over it in exclusion or defiance of plaintiff's right." (Citation omitted.)

■ Assuming the taking of the rig in Perry, Florida, not to have been tortious, conversion thereof could have arisen in Birmingham by exercise of dominion over it in exclusion or defiance of plaintiff's right to possession. A conversion is the gist of the action of trover irrespective of the manner in which possession was obtained. Long-Lewis Hardware Co. v. Abston, supra. 89 C.J.S. Trover & Conversion § 65.

■■ The title and right to possession to the "rig" lay in appellee, without dispute. The only element of the action of conversion remaining for proof by appellee-plaintiff below, were acts of dominion over it by appellants in exclusion or defiance of such right. The jury found as fact the presence of such acts from the evidence. The finding of the jury was strengthened by the trial court's denial of appellants' motion for a new trial. Stallworth v. Doss, 280 Ala. 409, 194 So.2d 566.

This Court on review cannot reverse a case on the grounds of insufficiency of evidence to support a verdict, unless after allowing all reasonable presumptions and inferences as to its correctness, it is clear such verdict is erroneous and unjust. So. Ry. Co. v. Reeder, 281 Ala. 458, 204 So.2d 808; Griffin v. Respress, 281 Ala. 168, 200 So.2d 469. As to the issue of a conversion by appellants of appellee's "rig," we cannot hold the evidence insufficient to support the verdict of the jury. There was sufficient evidence of conversion, either in the taking of possession in Florida or in exercising dominion in Birmingham in exclusion or defiance of appellee's right of ownership and possession. Since the evidence was in conflict, it was the jury's prerogative to believe or not believe witnesses. Locklear v. Nash, 275 Ala. 95, 152 So.2d 421.

■ Since we hold there was sufficient evidence presented to support the finding of the jury of a conversion by appellants, it must follow that appellants' charge of error in the refusal of the trial court to give the affirmative charge in favor of appellants (assignments 7, 8, 9, 10) was not error. In reviewing refusal of affirmative charge to defendant, we consider the evidence in light most favorable to plaintiff and we must affirm if there is a scintilla to support the complaint. Ramos v. Fell, 272 Ala. 53, 128 So.2d 481; Kemp v. Jackson, 274 Ala. 29, 145 So.2d 187.

Appellants present the proposition that by accepting the repairs to the trailer, which were made possible as a result of the taking and exercising of dominion over it by appellants, appellee is estopped to seek damages for the conversion. It is contended that estoppel arises from appellee having accepted the benefit from any tortious act of appellants. By accepting the repairs to the trailer appellee waived recovery for the alleged tort, says appellants. It is further contended such estoppel or waiver extends to recovery for conversion of both tractor and trailer, since they were one unit and inseparable.

**56**

■ We cannot see any estoppel or waiver of appellee's right to recover in tort for conversion merely because he accepted the repaired trailer. It was his right under the contract of insurance with appellants to have his loss compensated either by repairs or in cost of repairs. Appellants in taking this position are again failing to recognize the distinction between contractual rights and right to action resulting from tortious conduct. The conversion was a fait accompli and the cause of action had occurred long before the trailer was repaired and accepted by appellee. Appellee was not required to waive his rights under his contract of insurance because of pursuing his right of action for conversion. Neither was he required to waive his right to recover in tort in order to secure or accept his contractual rights. The theory of estoppel is the taking of a position in one instance, inconsistent with a position in another instance, to another's prejudice. We see nothing inconsistent in appellee's insistence on or acceptance of two distinct rights and remedies.

■ The proposition that the tractor-trailer was one unit and inseparable is not tenable. They were normally operated together and were taken by appellants while joined together, however, they were separate entities, capable of being used separately. They were insured as separate items of property and subject to being repaired or constructed by different sources. In any event, assuming a waiver of right of action for conversion of a part of the property, it is not a waiver as to the remainder. 89 C.J.S. Trover & Conversion § 88. Bryant v. Kenyon, 123 Mich. 151, 81 N.W. 1093.

The further proposition is submitted by appellants that an agreement to arbitrate the loss on the tractor subsequent to its recovery by appellee was a waiver of the conversion or effected an estoppel. This contention falls in the category as that previously discussed. It has no merit. The basis of this contention is that since the conversion resulted from an effort or purpose of adjusting appellee's loss, a subsequent agreement to arbitrate the loss was an approval or acceptance of the conversion.

■ The purpose or intent of the conversion has no extenuating effect, except as such purpose or intent may be considered in mitigation of exemplary damages. It is the act of conversion itself that gives a right of action, and not the intent to convert. Wilson v. Ratcliff, 16 Ala.App. 619, 80 So. 623. Again, we point out that adjustment or arbitration of the liabilities of appellants under the contract of insurance does not affect the right of action for conversion, unless, of course, such alleged conversion arose out of the agreement to arbitrate, and said agreement involved permission to take the property or exercise dominion over it. Such agreement or permission does not appear, according to the jury's finding, in this case.

■ It is contended by appellants (assignment 11) that since the property was taken in Florida, that the law of Florida must be applied, and that the trial court erred in reading to the jury Title 7, Sections 91 and 92, 1940 Code of Alabama. It is admitted by appellants that the law of Florida on conversion is essentially the same as that of Alabama. It is further admitted that the matter was tried largely upon alleged acts of conversion committed in Alabama.

Since there was evidence to support a finding that conversion was committed by appellants in Alabama, this contention of error appears moot. We can see no injury to appellants in the reading of these sections of Alabama law. We do not concede error in any event. The action of trover and conversion is transitory in nature. Williamson v. Howell, 17 Ala. 830. Some jurisdictions have held that action may be brought in one state for the conversion of personal property in another, if jurisdiction

of the parties can be obtained. 89 C.J.S. Trover & Conversion §§ 89, 90.

We come now to the last proposition submitted by appellants under assignments of error 1 and 6. That is, that the verdict of the jury was excessive and obviously predicated upon assessment of punitive damages.

We must agree that the verdict obviously was largely an assessment of punitive damages. Since there was no destruction of the property, no proof of physical damage, loss of use or replacement, the only actual damage shown by the proof was the payment of $281 by appellee for the removal and transportation of the tractor back to Dothan from Birmingham. The remainder of the damages assessed in the jury's verdict must be considered punitive.

It is clear punitive damages may be awarded in an action for conversion, even though not alleged in the complaint, where the evidence justifies such award. Stallworth v. Doss, 280 Ala. 409, 194 So.2d 566; Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358; Russell-Vaughn Ford, Inc. v. Rouse, supra. Such punitive damages are justified when the evidence discloses the conversion to have been committed in known violation of law and of owners rights, with circumstances of insult, or contumely, or malice. In the presence of such evidence, punitive damages are for the discretion of the jury. Roan v. McCaleb, supra; Roan v. Smith, 272 Ala. 538, 133 So.2d 224.

After carefully considering the evidence as to its application toward the awarding of punitive damages, we are of the opinion that the amount included in the verdict is excessive, and is so unwarranted by the evidence as to be unfair and unjust, and further, it indicates the presence of passion and prejudice in the jury's consideration.

There appears little doubt that the motive of appellants in the conversion was to effect repairs to the rig and comply with their contractual obligations. The jury determined from the evidence that the methods used were tortious and were in violation of appellee's legal rights. We cannot agree that appellants' actions indicated such malice, ill will, contumely or insult as to warrant punishment in the sum awarded.

From the fact that appellee regained possession of his tractor without opposition when he took affirmative action to do so, and in the absence of any direct evidence of denial of possession by appellants at any prior time, it may be inferred appellee could have regained possession earlier had he so chosen. Appellee apparently had no real objection to appellants' conversion other than that they refused to comply with his wishes as to the place of repair of the tractor. He made no demand or effort to regain possession of the trailer, and expressly accepted its repair. We do not hold that demand or effort to regain possession was necessary to right of recovery of damages, but such may be considered in relation to the degree of insult, contumely or humiliation felt by appellee.

Accepting the basic premise, that the jury's finding as to the presence of some evidence of insult and ill will justifying an award of exemplary damages should not be set aside on appeal, merely because it does not correspond with the opinion of this Court, (Mercury Freight Lines, Inc. v. Pharo, 264 Ala. 322, 87 So.2d 642; Tallapoosa County v. Holley, 268 Ala. 67, 104 So.2d 834) we do not feel constrained to approve the amount awarded when it is clearly wrong, unjust and grossly excessive. Ferguson v. Callahan, 262 Ala. 117, 76 So.2d 856.

After considering the question of excessiveness of the verdict in conference, this Court is of the opinion that the evidence as to malice and insult is too slight to support the verdict of $4000. We think the judgment excessive in the amount of $2500, and it will be reversed unless the

plaintiff-appellee enters a remittitur in that amount. Title 7, Section 811, Code of Alabama 1940.

Affirmed conditionally.