Appeal by the plaintiff from an adverse judgment in a wrongful death action. We reverse and remand.
On March 31, 1982, Vita Latonda Ingram was killed while driving an automobile which was struck by a truck being driven by Paul R. Smith for Savannah Ready Mix, Inc. Bessie Armstead, mother of the deceased, filed this action alleging negligence and wantonness in the operation of the truck. The defendants answered by pleading the general issue and contributory negligence. Subsequently, plaintiff dismissed her claim for negligence, leaving only the claim for wanton misconduct. On September 21, 1982, the case was tried, with the jury returning a verdict for the defendants, and a judgment was entered accordingly.
The collision between the deceased's automobile and defendant's truck occurred as the deceased was turning off Savannah Highway, onto a road leading to Central High School, in Florence, Alabama. In the direction from which the truck approached the site of the accident, there are highway signs warning of the presence of the school and school children. We note from plaintiff's Exhibit No. 9 that a speed limit of 35 m.p.h. was posted on the highway near the school entrance. That sign specified the 35 m.p.h. speed limit between the hours of 7:00 and 8:00 a.m. and 2:45 and 3:45 p.m. We also note from the evidence that this accident occurred at 6:40 p.m. Phillip Kipp, a state trooper, testified for the plaintiff that the truck driver, Smith, told him at the scene of the accident that he was going 50 m.p.h. The controversy centers upon the admission into evidence of certain testimony concerning the speed of the defendant's truck at the time of the accident, as bearing upon the question of whether or not the truck was being operated at a speed which was dangerous and unreasonable under the prevailing conditions.
The defendants called a witness, David G. Brown, as an accident reconstruction expert. Brown testified that he went to the scene of the accident ten months after it occurred. He made measurements there. He had reviewed statements by Smith, Gary Thomas and Lanny White, and he reviewed the state trooper's accident report, discussing it with him. He also examined several photographs of the vehicles made before they were moved, and several color photographs of the automobile and the accident scene taken the day after the accident. He had also reviewed the deposition of a Professor Robinson who had made measurements at the scene. Robinson, he recalled, had observed marks in the grass where the automobile came to rest and gouge marks in the asphalt, indicating the point of impact, and he measured the distance between them to be 124 to 125 feet. Brown testified that he also examined the tractor and the automobile after they had been repaired. He was then allowed, over objection, to testify that the car came to rest 100 feet from the point of impact. Brown was then asked:
 "Q. And what analysis and conclusion did you come to as a result of your investigation?
 "A. I performed a speed analysis to estimate or approximate the speed of the tractor trailer just prior to the impact with the automobile. This determined that the tractor trailer was going approximately 35 miles per hour. I would say in *Page 742 
the mid-thirties. The analysis of this type thing, you can't pin it down to an exact mile per hour, but it indicated that the truck was going in the mid-thirties.
". . . .
 "Q. Now, what significance does the distance between the point of impact and the point where the car came to rest have with regard to these analyses and calculations that you made?
 "A. Principally, there are several factors that you have to have to be able to do an analysis for speed. There are two types of analyses you can perform. One is a damage analysis, which was not done in this case due to the nature of the accident or it wasn't appropriate. The other type of analysis has to do with an energy analysis based upon skidding or sliding of the automobile and in this particular case, the distance has an important aspect of how far the automobile slid because the further it slides, the higher the initial speed it would have to had to slide that distance. In other words, if it slides ten feet, it would not have had to have been going as fast as if it slid a hundred vs [sic] two hundred. In addition to knowing how far the vehicle goes, of also paramount importance is having an approximation at least of the coefficient of friction of the surface on which it's sliding. This, essentially, is how much resistance is there to it sliding. If your coefficient of friction is high, there would be a lot of resistance to it sliding. If it's low, it would be very little resistance, and for a given speed it could go further. Those are the two basic things you need to know — the coefficient of friction and distance that it travels.
 "Q. What coefficient of friction did you use in the calculation?
 "A. Well, I spoke to the police officer and he indicated that —
 "MR GONCE: May it please the Court, I object on the basis this is hearsay.
 "THE COURT: I'll overrule the objection if a part of his opinion was based on information that he received from someone else. It's a hypothetical sort of situation anyway, as I already reminded the jury that the weight that you're to give his answer to a hypothetical question is based purely on the correctness of the facts that he was provided. I'll overrule the objection with that understanding.
 "A. I had spoken to the police officer. He indicated that the night of the accident the ground was wet and that it was very slick. He did not perform any tests, however, I asked him if he could please qualify how slick was it. I asked him to compare it to an automobile braking on a dry road. Normally, an automobile braking on a dry asphalt would have a coefficient of friction of about point seven. It can vary some, but that's a pretty good rule of thumb. He said that as far as he was concerned based upon his observations, that it was at least twice as slippery. This would mean that the coefficient of friction would be less than half point seven — in this case, point three five. I actually utilized it trying to be conservative in my answer — I utilized point three, five, and that's what calculated the speed of approximately 35 miles per hour for the truck."
This testimony, it is important to note, was not made in response to a hypothetical question, even though the trial court referred to it as a "hypothetical sort of situation." It is axiomatic that an expert witness may base his opinion upon either facts of which he has firsthand knowledge or facts which are assumed in a hypothetical question asked of him. C. Gamble,McElroy's Alabama Evidence, § 130.01 at 285 (3rd ed. 1977). Or as stated in Harper v. Baptist Medical Center-Princeton,341 So.2d 133, 135 (Ala. 1976), quoting Hagler v. Gilliland,292 Ala. 262, 292 So.2d 647 (1974):
 "`An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, based upon facts in evidence.'"
An examination of witness Brown's testimony relating to his opinion of the *Page 743 
truck's speed before impact shows that it was inadmissible as hearsay. Brown used the police officer's (trooper's) out-of-court statements to him relating to the slickness of the highway as his basis for determining the coefficient of friction, i.e., "the ground was wet and . . . it was very slick. He did not perform any tests. . . . I asked him to compare it to an automobile braking on a dry road. . . . Hesaid that as far as he was concerned based upon hisobservations, that it was at least twice as slippery. Thiswould mean that the coefficient of friction would be less thanhalf point seven — in this case, point three five."
It is clear from this testimony that the expert witness was using the opinion or conclusion of the police officer in order to arrive at his own conclusion on a matter which he himself deemed important, the coefficient of friction (by which we assume was meant the interaction between the highway, as a constant, and the moving vehicle, as a variable, to produce a certain speed). Thus, his opinion on this important aspect was not based upon facts within his own knowledge or upon a hypothetical question, but was based partly upon the opinion of another and used for a hearsay purpose. That is, the witness himself would have to have believed it to be true in order to reach his opinion based upon it. Upon that premise it was error to overrule the plaintiff's objection. Hagler, supra.
The defendant argues that the record is incomplete, and therefore we are required to presume the existence of other evidence adduced at trial to establish the proper predicate for Brown's opinion, citing Interlink Cotton Gin Company, Inc. v.Elmer Tallant Insurance Agency, 361 So.2d 604 (Ala.Civ.App. 1978), and other cases. Those authorities are distinguishable, in that they pertain to situations in which there was no record of the evidence before the court on the issue, resulting in a presumption that the trial court's action was correct. E.g.,Johnson v. Citizens Bank, 145 Ala. 654, 39 So. 577 (1905). Here, in contradistinction, the transcript of the evidence clearly sets out through his own testimony the matters upon which Brown based his opinion, and one of these was the conclusions of the investigating officer.[1]
We conclude, therefore, that it was reversible error to admit the opinion of the reconstruction expert on the material issue of the speed of the defendant's truck at the time of the collision.
Discussion of the scientific analyses which are used by reconstruction experts to arrive at conclusions is not necessary to this decision. Nevertheless, because the case is being remanded for a new trial, we invite the parties' attention to authorities which bear upon that type of evidence, should such evidence be marshaled: Anno., 29 A.L.R. 3rd 248;Salotti v. Seaboard Coast Line R. Co., 293 Ala. 1,299 So.2d 695 (1974); Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804
(1972); Giles v. Gardner, 287 Ala. 166, 249 So.2d 824 (1971);Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967); Williamsv. Roche Undertaking Co., 255 Ala. 56, 49 So.2d 902 (1950);Huguley v. State, 39 Ala. App. 104, 96 So.2d 315, cert. den.,266 Ala. 697, 96 So.2d 319 (1957).
For the reasons expressed the judgment is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX and SHORES, JJ., concur.
JONES, J., concurs specially.
[1] It is also obvious that Brown used as a basis for his opinion the accident report prepared by that officer. That report was not made a part of the evidence and would have been inadmissible if offered for a hearsay purpose. Nettles v.Bishop, 289 Ala. 100, 266 So.2d 260 (1972) (error to admit trooper's accident report after reconstruction expert testified that in forming his opinion he considered facts therein).