516 So.2d 576 (1987)
Mary Nell HOLLIS, Administratrix of the Estate of Joe Solomon Stokes
v.
Douglas Lee SCOTT.
85-1051.
Supreme Court of Alabama.
October 2, 1987.
Rehearing Denied November 6, 1987.
*577 Joe C. Cassady of Cassady, Fuller & Marsh, Enterprise, for appellant.
J.E. Sawyer, Jr. of Rowe, Rowe & Sawyer, Enterprise, and Debbie Jared of Lindsey & Jared, Elba, for appellee.
MADDOX, Justice.
This case involves a collision between an automobile driven by defendant Joe Solomor Stokes with a motorcycle being operated by plaintiff Douglas Scott. Scott brought suit against Stokes for negligently causing or allowing his automobile to collide with Scott's motorcycle, and a jury awarded Scott $1 million as damages. Stokes appealed.[1] Four issues are presented for our resolution:
(1) Was there any credible evidence presented to sustain the verdict for the plaintiff?
(2) Did the trial court err in allowing the testimony of plaintiff's accident reconstruction expert over defendant's objection that no proper predicate had been laid for his testimony as an expert?
(3) Did the trial court err in denying the defendant's motion for a directed verdict on his plea of contributory negligence?
(4) Is the verdict excessive?

FACTS
On May 5, 1984, plaintiff Scott, Stanley Jackson, and six other men were riding motorcycles in Covington and Coffee Counties. They travelled from Enterprise to Opp and from Opp to Andalusia and then back to Opp. Between 3:00 p.m. and 4:00 p.m., the motorcyclists left Opp on Highway 84 heading east toward Elba. They were paired off, with Scott and Jackson riding together behind four other riders.
The accident that is the basis of this lawsuit occurred six miles out of Opp. The evidence regarding how the accident occurred is conflicting. Scott's version of the accident is as follows:
"At the time Eugene and his brother and Stackhouse and Smith, they were out of sight until I come into this curve. Just as I come into this curve I saw Stackhouse and Smith. Just as I saw them they were coming out and they got too close. Looked like they were going to hit. About that time I saw the car. I already saw the car coming up the road. It was a red Cordoba. By the time it got past Stackhouse and them it went off the edge of the road and come back across on my lane and hit me head on. Just before the car hit me, about from here to maybe the jury right there, my eyes just closed."
Scott and Jackson testified that they were travelling between 55 and 60 miles per hour. Stokes's testimony concerning the accident differs substantially from Scott's. Stokes testified that he was driving between 30 and 35 miles per hour when the motorcycle driven by Scott came around the curve at 75 to 80 miles per hour, and that Scott lost control and came *578 into his lane of traffic, hitting his automobile.
The point of impact was also contested in this case. Jackson and Scott both testified that the Stokes vehicle ran off the road and then into their lane of traffic. Bobby Smith, an automobile accident reconstruction expert, who investigated the accident for Scott, testified that the Stokes vehicle, in his opinion, crossed over into Scott's lane and that the point of impact occurred in Scott's lane. Stokes testified that Scott lost control of his motorcycle and crossed into his lane and that the impact occurred there. Two Alabama state troopers who investigated the accident shortly after it happened testified that the point of impact was in Stokes's lane of traffic. Attached as appendices A, B, and C are diagrams that depict the sharp disagreement between the witnesses for the plaintiff and those for the defendant.
As a result of this accident, Scott's left foot was amputated and he received substantial injuries to his right leg.
The doctor who treated Scott for these injuries was of the opinion that Scott has a minimum functional disability of 50% to the body as a whole due to the left foot amputation and right leg damage. He further testified that the total medical bills of $43,603.50 were necessary and reasonable. A rehabilitation consultant, basing this assessment on Scott's prior work history and educational level, testified that Scott has essentially lost all wage earning capacity because of the injuries he received in the accident.

I
The first issue we address is whether there is credible evidence to sustain the verdict for Scott. Stokes's administratrix contends that there is not and that the verdict is contrary to the law, and the evidence. Specifically, she contends that the testimony of plaintiff's witness Stanley Jackson should be disregarded because it is unbelievable and inherently improbable and defies the laws of physics.
As indicated earlier in this opinion, and as is shown by the appendices, there is sharp disagreement on the question of the point of impact. Also, there is substantial evidence from which the jury could have found that the plaintiff had been drinking and at the time of the accident was exceeding the speed limit and was in defendant's lane of traffic. Two law enforcement officers placed the point of impact in the defendant's lane. Plaintiff's witnesses placed the point of impact in plaintiff's lane. While the testimony of plaintiff's witnesses regarding distances, and the events that occurred between those distances, would seem to be contrary to the basic law of physics, we are not convinced that the testimony is incompetent. The credibility of plaintiff's witnesses was for the jury to determine.
It is well-settled law in this state that when the evidence is conflicting, the jury is free to believe or not believe the witnesses. Roberson v. Ammons, 477 So. 2d 957 (Ala.1985); Carolina Casualty Ins. Co. v. Tisdale, 46 Ala.App. 50, 237 So.2d 855 (1970), cert. denied, 286 Ala. 741, 237 So.2d 861 (1970). The defendant correctly argues that where testimony of a witness is incredible, unbelievable, or inherently improbable, it is to be disregarded as without probative value. King v. Brindley, 255 Ala. 425, 51 So.2d 870 (1951); American National Bank & Trust Co. v. Powell, 235 Ala. 236, 178 So. 21 (1937); Ford Motor Credit Co. v. Jackson, 347 So.2d 992 (Ala. Civ.App.1977). In King v. Brindley, this Court stated the rule, as follows:
"The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy its probative force. Where, however, the testimony of a witness is incredible, inherently or physically impossible and unbelievable, inherently improbable and irreconcilable with, or contrary to physical facts and common observation and experience, where it is so opposed to all reasonable probabilities as to be manifestly false, or is contrary to the laws of nature or to well-known scientific principles, or where it cannot be said to amount to substantial evidence of facts testified to or accepted as a basis of liability, it is to be disregarded *579 as being without evidentiary value even though uncontradicted. 20 Am.Jur. pp. 1033, 1034, 1035, §§ 1183, 1184; Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332; Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 30 A.L.R. 802; Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, 91 A.L.R. 212."
In King v. Brindley, this Court did say that the testimony of one of the witnesses in that case was "by far, too great a tax on judicial credulity." We cannot say the same about this case. In this case, there was evidence that the defendant's vehicle had traversed the plaintiff's lane of traffic. When this occurred and what caused the vehicle to go to the left is disputed. Consequently, the facts here do not parallel the facts set out by the Court in King v. Brindley. Consequently, we cannot say, as a matter of law, that the testimony of the plaintiff's witness was so incredible and unbelievable that it should be disregarded.
In short, we are of the opinion that, although the evidence was conflicting, there was credible evidence to support the jury verdict, and we cannot assume the role of the jury and weigh the evidence. In fact, we must indulge all favorable presumptions necessary to sustain the verdict and the trial court's conclusion not to disturb it, because we fail to find that it is plainly erroneous or manifestly unjust insofar as liability is concerned. Elba Wood Products, Inc. v. Brackin, 356 So.2d 119 (Ala.1978).

II
The second issue raised is whether the trial court erred in allowing the testimony of Scott's expert witness, Bobby Smith, over Stokes's objection that a proper predicate had not been laid. Appellant contends that Smith's expert testimony was not predicated on sufficient facts.
Alabama law is clear regarding the testimony of an expert witness. This Court, in Harper v. Baptist Medical Center-Princeton, 341 So.2d 133 (Ala.1976), quoting from Hagler v. Gilliland, 292 Ala. 262, 292 So. 2d 647 (1974), stated:
"An expert may give his opinion based upon his own knowledge of the facts, stating these facts, then his opinion; or, he may give an opinion based upon a hypothetical question, based upon facts in evidence."
An expert is "not prohibited from stating his opinion based upon his own investigation and examination." Hagler v. Gilliland, supra. It is within the trial court's discretion as to whether or not a particular witness will be allowed to testify as an expert, and the trial court's decision will not be disturbed on appeal except for palpable abuse. Osborne Truck Lines, Inc. v. Langston, 454 So.2d 1317 (Ala.1984).
In Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972), this Court considered the use of expert testimony in cases involving collisions between automobiles, in which the laws of "physical forces, velocities and dynamics, involving laws of motion and force" were factors. This Court commented on the standards to be applied when considering whether a person will be allowed to testify as an expert:
"The use of expert testimony is expressly authorized by Title 7, section 437, Code of Alabama 1940 [Code 1975, § 12-21-160], which provides:
"`The opinions of experts on any question of science, skill, trade or like questions are always admissible; and such opinions may be given on the facts as proved by other witnesses.'
"The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Baggett v. Allen, 273 Ala. 164, 137 So.2d 37; Johnson v. Battles, 255 Ala. 624, 52 So.2d 702.
"Generally before expert testimony is admissible it should appear the jurors themselves are incapable, for want of knowledge or experience of the subject matter, of drawing correct conclusions from the facts proved. Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So.2d 727. It is obvious that the subject of Mr. Robinson's testimony was such *580 that a jury would not be equally competent to reach a conclusion from the facts of the case.
"As stated in Woyak v. Konieske, 237 Minn. 213, 54 N.W.2d 649 (1952):
"`Where the opinion of a witness is elicited, the proper test to determine his qualification is whether his knowledge of the matter in relation to which his opinion is sought is such that it will probably aid the trier of the question to determine the truth.'
"It would appear that expert testimony in the field of physical forces, velocities and dynamics, involving laws of motion and force, probably would be of considerable assistance to the jury.
"* * *
"This Court does not interpret these cases [cited earlier in the opinion] as holding that regardless of the qualification of the expert, the scientific methods employed and the quantum of scientific data presented that, nevertheless, any such expert testimony is inadmissible as a matter of law. To so rule would indicate that this Court has engaged in a fact-finding function which appellate courts scrupulously avoid where the witnesses testify before the court and jury.
"With recent technological developments in the fields of medicine, engineering, physics and mathematics we are now living in a world which has become increasingly more complex. It is important that our court system utilize sound technological advancements in judicial proceedings to bring evidence of greater certainty and exactness before the jury.
"One commentator has stated:
"`... [I]f trial by jury as a means of fixing damages and fault in automobile accident cases is to accomplish its objectives, the law must take a more enlightened outlook on the problem of the admissibility of expert opinion and other scientific objective data relating to the laws of motion.' Reach, Scientific Data and Expert OpinionIts Use in Automobile Accident Cases, 24 Ins. Coun.J. 99 (1957).
"This problem was also recognized in EvidenceAdmissibility of Expert Opinion Testimony in Motor Vehicle Accident Cases, 39 Miss.L.J. 317, 324 (1968) where the author wrote:
"`... Our world is becoming increasingly complex, and inevitably more and more subjects will fall outside the pall of common knowledge. The importance of expert opinion testimony will expand in direct proportion to the expansion of man's knowledge. If the jury system is to survive, it must continue to reach the right decision more often than not. A more enlightened attitude toward the admissibility of expert opinion testimony appears, in this light, essential to the survival of juries as such.'"
288 Ala. at 264-66, 259 So.2d at 813-15. See also Armstead v. Smith, 434 So.2d 740 (Ala.1983); Dyer v. Traeger, 357 So.2d 328 (Ala.1978); and Williams v. Tyler, 340 So. 2d 20 (Ala.1976), following Maslankowski.
The defendant contends that if plaintiff's expert was to give an opinion it must have been based upon hypothetical facts. We are of the opinion that a properly qualified expert witness may base his opinion upon either facts of which he has firsthand knowledge, or facts in evidence that are assumed in a hypothetical question asked of him. Armstead v. Smith, 434 So.2d 740 (Ala.1983).
Of course, it must be shown that the witness has sufficient knowledge of the facts to enable him to form an opinion, and he must testify as to the facts in his own knowledge upon which his opinion is based. See Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633 (1927); Brown v. Mobile Electric Co., 207 Ala. 61, 91 So. 802 (1921).
We are of the opinion that enough evidence was presented to allow Bobby Smith to testify from his own personal knowledge, rather than from a hypothetical question. It is clear that Smith investigated the scene of the accident, made measurements at the scene, confirmed depiction of the scene and markings with the police, and inspected the vehicles involved *581 in the accident. Thus, Bobby Smith was sufficiently acquainted with the facts to base an opinion on the point of impact without the aid of a hypothetical question.

III
The third issue raised is whether the trial court erred in denying Stokes's motion for directed verdict on his plea of contributory negligence.
Stokes does not cite any authority in support of his argument, but what we have said in addressing the first issue is sufficient to affirm the trial court's ruling on this issue.

IV
The fourth and final issue presented for this Court's review is whether the $1 million damages award was excessive. Stokes, in his motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial, claimed that the verdict was excessive and a result of bias and passion. The administratrix argues the same point here and again says that the verdict was excessive, primarily because "there was no credible evidence to sustain any award and even if there was, the amount of the verdict is shocking to the conscience."
Appellant makes this argument regarding the question of excessiveness:
"This verdict must be the result of bias, passion and prejudice. There is no credible evidence to sustain any award and even if there was, the amount of the verdict is shocking to the conscience.
"The cases of Central of Georgia Railway Company v. Steed, [287 Ala. 64], 248 So.2d 110 (Ala.1971); Beloit Corporation v. Harrell, 339 So.2d 292 [992] (Ala.1976) and Alabama Power Company v. Henderson, 342 So.2d 323 (Ala. 1976), are cited, not for the purpose of showing a reversal because of excessiveness, they don't, but to show that with far more injury and other loss these verdicts did not approach the one in this case.
"There is no claim made for loss of wages or loss of future wages. (Plaintiff had not been employed for 17 months prior to the accident.)
"An employment expert testified, but he furnished no evidence of plaintiff's chance of employment, if he had not been injured, and he expressed no opinion as to any amount of future wage loss.
"The plaintiff was asked by his counsel:
"Q. Do you feel like you are physically able to hold down employment now?
"A. I believe I can."
We cannot tell from the record before us whether the trial court took into consideration any of the factors argued by appellant here in deciding whether the verdict was excessive, and the trial judge did not state how he arrived at his judgment that the verdict was not excessive.
In order for this Court to carry out its responsibilities as mandated by Code 1975, § 12-22-71, we could remand the cause to the trial court for that court to set forth the reasons it used to support its judgment in this case, but we have examined the record and the evidence introduced to support the award, and we cannot say that the verdict is a result of bias, passion, prejudice, or other improper motive on the part of the jury. Alabama Power Co. v. Mosley, 294 Ala. 394, 318 So.2d 260 (1975).
AFFIRMED.
JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur, in part, and dissent, in part.
STEAGALL, J., not sitting.
*582 
*583 
*584 
*585 HOUSTON, Justice (concurring in part; dissenting in part).
I concur with the majority as to the issue of liability; however, even though the damages were compensatory rather than punitive, I would remand on the issue of excessiveness, for the trial court to state its reasons for denying the remittitur. Davison v. Mobile Infirmary, 518 So.2d 675 (Ala.1986).
TORBERT, C.J., concurs.
NOTES
[1] Stokes's administratrix has been substituted as appellant.